## Case No. 11,744.

### The RHODE ISLAND.

[2 Blatchf. 113; 1 Abb. Adm. 106, note.]

Circuit Court, S. D. New York. Oct., 1849.[2]

COLLISION—DAMAGES—DELAY—INTEREST AS COMPENSATION.

1. Whether a libellant, in admiralty, is entitled to damages, in a case of collision, for the

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

2 [Affirming Case No. 11,740a.]

delay and loss of trips while his vessel is undergoing the necessary repairs, quære.

[Cited in The Margaret J. Sanford, 37 Fed. 152.]

2. There is no settled rule as to whether anything should be allowed, or as to the measure by which the allowance, if any, should be determined.

[Cited in Munch v. The Sucker State. Case No. 9,921; The Margaret J. Sanford, 37 Fed. 151.]

3. In a case where no vessel was hired to supply the place of the libellant's vessel, and the district court allowed to the libellant interest, at the rate of six per cent. per annum, upon the value of his vessel before the collision, for the interval after the collision until she was repaired and fitted to resume her trips, the allowance was upheld against an appeal by both parties, not as being founded on any established principle, but as being just in the particular case and as high a measure of damages as was warranted.

[Cited in New Haven Steamboat Co. v. The Mayor, 36 Fed. 718; La Champagne, 53 Fed. 400.]

[Appeal from the district court of the United States for the Southern district of New York.]

A libel in rem was filed in the district court against the steamboat Rhode Island, to recover for damage done to a propeller by a collision. The court decreed in favor of the libellant, and ordered a reference to a commissioner to ascertain the damages. [Case No. 11,745.] The commissioner included in the award of compensation the sum of twenty dollars a day for each day after the collision, until the damaged vessel was repaired and fitted to resume her place in the line in which she was running, as being an amount which, according to the evidence, would have enabled her owner to supply her place with a vessel to perform her trips during such interval. No vessel was hired to supply her place. On exception, the district court set aside that allowance, and sent the report back to the commissioner, with a direction to ascertain the value of the damaged vessel before the collision, and to allow upon that amount, as capital invested in her, interest at the rate of six per cent. per annum for such interval, instead of the former allowance. [Case No. 11,740a.] A decree having been entered upon that basis in the district court, both parties appealed to this court.

Francis B. Cutting and Edward H. Owen, for libellants.

Washington Q. Morton and Alexander Hamilton, Jr., for claimants.

NELSON, Circuit Justice. The principal question in this case is, whether a libellant is entitled to damages, in a case of collision, for the delay and loss of trips while his vessel is undergoing the necessary repairs. I do not understand the direction given to the commissioner by the court below, as intended to be laid down as a general rule to govern all cases of the kind, but as an approximation

to an indemnity in the particular case, under its peculiar circumstances. It was an allowance for a supposed or apparent loss, incident to the damage done by the collision, in regard to which no settled rule can be found; opinions being conflicting whether any thing should be allowed, and, if any thing, by what measure the allowance should be determined. The difficulty is intrinsic, arising out of the nature of the loss; as its precise amount, or even a reasonable approximation to it, cannot be ascertained by the application of any known or fixed rule. On this ground, the damage was denied altogether in an analogous case in the supreme court of New York. Blanchard v. Ely, 21 Wend. 342. That some loss enters into the general damage to the vessel, on account of the time necessarily consumed in making repairs upon her, is obvious enough; and that loss results directly from the injury. But the difficulty lies in finding any rule by which to ascertain the amount with the certainty required by law; it being contingent and speculative, and depending upon the profits of the business in which the vessel is engaged.

If, in this case, the owners of the injured vessel had hired another one of the kind, for a reasonable compensation, to supply her place while she was undergoing repairs, there might be something tangible in the amount thus actually paid for the purpose of continuing the business. I do not say that the allowance would then be free from difficulty, or that it could be brought within any fixed rule of law. All I mean to say is, that there would then be less embarrassment in the allowance than there is in the case before me, where the party did not see fit to assume the risk and responsibility of a substitute. The character and profits of the business were, doubtless, the grounds upon which the owners of the injured vessel were to determine whether it was expedient for them to go to the expense and trouble of procuring another vessel. If they had chosen to do so, the risk of profit or loss therefrom would, perhaps, have been one which they would have had a right to assume. And, in such a case, as the expense of procuring the new vessel would have been occasioned by the collision, there would have seemed to be some propriety in allowing it as an item of damages. But these considerations do not enter into the case when no substitute has been procured.

I do not intend, however, to determine how far the court would feel itself justified, where another vessel had been actually employed, in allowing the sum paid for her hire. There are difficulties attending the question, which should lead to caution and hesitation in the adoption of that sum as the measure of compensation. The inquiry might arise, for instance, in a case where another vessel was not procured, whether it was practicable to procure one; for, if it was not, after a fair endeavor, an allowance upon the basis of the sum necessary to procure one, would seem to

be as reasonable as the allowance of the sum actually paid where one had been in fact obtained.

Upon the whole, I am not inclined to interfere with the allowance as made; not because I think it founded upon any established principle, but because it is just enough in itself, and I have not been able to find any principle that would justify the adoption of a higher measure of damages in the case Decree affirmed.