CARR *v.* AUSTIN & N. W. R. Co. and another.*

*(Circuit Court, E. D. Texas. November, 1882.)*

**1. CHARTER-PARTY—LIGHTERAGE.**

Where a charter party provides that " the cargo is to be brought to and taken from along-side at merchant's risk and expense, and free of lighterage to the ship, etc., and being so loaded shall therewith proceed," etc., the cost of light-erage at the ports of both departure and destination, for lading and discharge of the cargo, is at the expense of the merchant.

**2. PRIMAGE—VARIANCE BETWEEN CHARTER-PARTY AND BILL OF LADING.**

The charter-party being the contract between the parties, and that making no mention of primage, none can be allowed, although it was stipulated for in the bill of lading. Primage is no longer a gratuity to the master, unless so ex-pressly stipulated, but belongs to the owners or freighters, and is but an increase of the freight rate. The charter-party having fixed the rate of freight, the bill of lading given thereunder cannot enhance it.

**COSTS.**

Costs of the district court should be borne by the claimants; but as the decree of that court has been reduced, costs on appeal should be borne by the appellee.

In Admiralty.

*Mr. McLemore,* for libelant.

*Mr. Waul,* for claimants.

PARDEE, C. J. The facts of the case are substantially as pro-pounded in the libel and amended libel; the amount due for freight being the only material fact overstated,—£956 5s. 4d. being the true amount unpaid, and not £1,080 11s. 11d. as claimed. Besides this fact, the only other fact contested is whether or not Post, Martin & Co. (claimants and assignees of the bill of lading) had notice of the charter-party in pursuance of which the bill of lading was issued. The evidence on this point is sufficient to establish the fact of notice. Leaving out of the question the recitals on the face of the bill of lading, showing the shipment of an entire cargo of railroad iron, such goods as would be likely to suggest lighterage, and demurrage, etc., the two facts undisputed and unexplained,—(1) of the prepayment of one-half of the freight, less interest and insurance indorsed on the back of the bill of lading; (2) and of the consignee's instructions to his

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

agent prior to the arrival of the ship to furnish lighterage,—taken with the fact that lighterage was furnished by the claimant without question, are sufficient to satisfy me that the claimant, who thus carried out the specifications of the charter-party in advance, must have had notice of its existence and terms.

On the construction of the charter-party there is only one question raised, and that is whether, under its provisions, the consignees were required to furnish lighterage, if necessary, at the port of destination. The clause in the charter-party in relation to lighterage is in these words:

"That the said ship, being tight, stanch, and strong, and every way fitted · for the voyage, shall, with all possible dispatch, sail and proceed to Middleboro-on-Tees, where ordered by the charterers, but where she can lay always afloat, or so near thereto as she may safely get, and there load from the factors of affreighters a full and complete cargo of rails, say 1,700 to 1,800 tons, at owner's option, not exceeding 30 feet in length, *which is to be brought to and taken from along-side at merchant's risk and expense,* and *free of lighterage to the ship, etc.,* and being so loaded shall therewith proceed to Galveston bay, or so near thereto as she may safely get," etc.

A plausible argument is made that the lighterage therein referred to relates only to the lighterage necessary to take the cargo on board, and not to the lighterage that might be necessary in discharging cargo. It would have been strange indeed if the parties, in making a charter-party with as many details as this one under consideration has, and when contracting specifically in relation to lighterage, had been silent as to that question, leaving it to custom when contracting for a cargo of railroad iron to the port of Galveston, where lighterage is so notoriously necessary. But I cannot take the narrow view of the clause in question claimed for it by the learned proctor. It is stipulated that the cargo "is to be brought to and taken from alongside at merchant's risk and expense, and free of lighterage to the ship." The construction claimed would leave the words "and taken from along-side" absolute surplusage, or would render it necessary to hold that when the merchant brought the cargo to the ship, it was to be taken aboard and loaded at merchant's risk and expense, which was, obviously, not the intent nor contract of the parties.

On the question of primage, which has been argued and seems to have been allowed in the district court, I find it is only claimed in the libel in the guise of freight, although specified in the bill attached to the libel as primage. The charter-party, as has been found, constituted the contract between the parties, and as that makes no men-

tion of primage, none can be allowed, although it was stipulated in the bill of lading.

Primage is no longer a gratuity to the master, unless specially stipulated; but it belongs to the owners or freighters, and is nothing but an increase of the freight rate.

The charter-party fixes the rate for freight, and the bill of lading given thereunder cannot enhance it.

The case, then, as it appears to me, entitles the libelant to a decree in his favor for the following amounts, to-wit: For half freight money, unpaid, £956 5s. 4d.; reduced to United States currency, at $4.80, agreed rate; making $4,590.08, with interest thereon from January 9, 1882, at 6 per cent. For five days' demurrage, at £35 per day, or £175; reduced to United States currency, at $4.80, agreed rate; making $840, with interest thereon at 6 per cent. from January 13, 1882. For charges paid on freight, in landing and caring for same, etc., to-wit:

| | | |
|---|---|---:|
| Watchmen, $28.50 and $27, | - - - - - - | - $ 55 50 |
| Wharfage, - - | - - - - - - | 75 00 |
| Handling and storing, - | - - - - - - | - 250 00 |
| Lighterage, - - | - - - - - - | 562 50 |
| Amounting to | - - - - - - | $943 00 |

—Upon which interest at 6 per cent. should be allowed from date of payment, say January 26, 1882, when last payment was made, so far as dates are shown. And as the property libeled, and on which libelant had a lien for his demand, has been released and delivered to the claimants, Post, Martin & Co., on bond to stand in place of the property, the decree should be against the claimants and their sureties on the release bond for the amounts as above found due. The costs of the district court should be borne by the claimants; but as the decree of that court has been reduced, the costs on appeal should be borne by the libelant and appellee.

A decree in accordance with these views will be entered.