<hr />

## LA CHAMPAGNE.

### SEWALL et al. v. LA CHAMPAGNE.

#### (District Court, S. D. New York. November 26, 1892.)

1. COLLISION—DAMAGES—SALVAGE CLAIM.
   A reasonable amount paid in settlement of a salvage claim against a vessel damaged in collision, where the claim actually went to suit on disputed facts, and there is no reason for supposing that the settlement was collusive, is a proper item of damage to be charged against the vessel found in fault for the collision.

2. SAME—ASCERTAINING VALUE OF VESSEL BEFORE COLLISION.
   A vessel, after collision, was sold in her damaged condition for $6,650, and the damage was repaired for $9,500, making her sound value by this method $16,150. Estimates as to her value by witnesses for one party varied from $12,000 to $14,000, for the other party from $22,000 to $25,000. The commissioner adopted the value first above given. *Held*, that his finding would not be disturbed.

3. SAME—DEMURRAGE—WHEN NOT RECOVERABLE—INTEREST.
   Where owners of a vessel damaged by collision elect to have her sold in her damaged condition, they cannot recover demurrage; for interest is the legal indemnity for the delay in collecting the balance of her original value from the wrongdoer.

4. SAME—INTEREST ON AMOUNT PAID FOR WRECK—WHEN RECOVERABLE.
   Interest should be added on the amount paid for the wreck by the purchaser during the period occupied by him in repairing, when that mode is adopted of settling the value of the vessel, since, in order to repair, it is necessary that such amount should lie idle during that period.

5. SAME—LOSS OF FREIGHT—VESSEL'S EXPENSES.
   On a voyage broken up by collision, an allowance, as an item of damages, of the whole amount of freight, less the expenses of the vessel during the time it would have taken her to complete her voyage, is proper.

In Admiralty. On exceptions to commissioner's report.

Owen, Gray & Sturges, for libelants.
Jones & Govin, for claimants.

BROWN, District Judge. The damages from collision in the above case having been apportioned, (43 Fed. Rep. 444,) and the report of the commissioner assessing the damages filed, exceptions have been taken to the amount allowed for the damages to the vessel, for demurrage, for salvage, for freight, and for some other items.

1. Salvage. The collision occurred on February 26, 1890, about 25 miles off Shinnecock light, Long island. The schooner was afterwards towed in by the Merritt Wrecking Company, who claimed salvage. The claim being resisted by the libelants, the vessel was libeled therefor, and was sold under a decree of the court on or about April 3, 1890. The claim of salvage was settled upon a compromise between the parties for $2,750, which was paid by the libelants on April 30, 1890, besides a considerable bill for the costs and expenses of suit. The sum of $2,750 has been allowed by the commissioner, but not the costs. The Fletcher, 42 Fed. Rep. 504.

The considerations urged against the validity of the original claim to salvage, have, no doubt, much support in the evidence. The facts were, however, in dispute, and the matter was in litigation. There is no ground to suppose the compromise was a collusive settlement. The libelants were just as much interested as La Champagne in opposing the claim; and on the whole I concur with the views expressed in extenso by the commissioner in the allowance of this claim.

2. Damage to the Schooner. The libelants, having elected to have the schooner sold, were entitled to recover the difference between her value in her damaged condition and her value before the collision. There were two methods of arriving at this difference: One, by proof of the schooner's market value before and after collision respectively; and the other, by proof of the cost of repair and of putting her in as good condition as before. Both kinds of evidence were given.

The purchaser of the vessel caused her to be repaired at an expense of $11,000, of which $1,500, as he testified, would cover all extra repairs outside of the damages caused by the collision. The commissioner upon this evidence accordingly allowed $9,500 for damages to the schooner, besides the $2,750, the amount paid for salvage. I do not find in the proofs of value of the schooner any sufficient reason for disturbing this finding.

The amount realized on the marshal's sale and received by the libelants, was $6,650. Assuming that to have been the fair market value of the schooner in her damaged condition, adding to that amount the $9,500, allowed by the commissioner, and also the additional sum of $83.12 mentioned below, (5,) would make a total of $16,233.12 as the value of the schooner before collision. The estimates made by the claimants' witnesses as to her value varied from $12,000 to $14,000; those of the libelants' witnesses from $22,000 to $25,000. Upon such evidence the allowance of a sum for damage which virtually makes the schooner worth $16,233 before collision, furnishes no reasonable ground of complaint to the defendants. The libelants cannot complain of the use of the evidence as to the cost of repairs, because this is a proper limit in the recovery of damage, and a necessary check upon the uncertain estimates of value; while if the wreck was worth more than the sum for which it sold, it is the libelants' own fault that they permitted the sale for that sum to outside parties, instead of protecting their own interests. The exceptions on this item are, therefore, overruled.

3. Demurrage. By electing to have the vessel sold, the libelants elected not to use the vessel further, and disclaimed any further use of her. They elected to take her value, viz., $6,650, and to have the

use of the money, instead of the use of the vessel. They have received the $6,650 proceeds of sale, and had the benefit of the use of that money. To allow for a supposed loss of the use of the schooner after the receipt of this money would be to allow a double payment, pro tanto, for the same thing. The Belgenland, 36 Fed. Rep. 504. The money thus received the libelants were at liberty to employ either in the purchase of another vessel in place of the one damaged and sold, or in any other way they saw fit. The City of Alexandria, 40 Fed. Rep. 697, 700. They cannot claim for the loss of the use of that particular vessel, because, as I have said, they elected not to use her, but to sell her and use the proceeds. For the delay in receiving the balance of her previous value over the proceeds of sale, interest is the legal indemnity. Interest, therefore, and not demurrage, should, in a case like the present, be allowed. The Amiable Nancy, 3 Wheat. 560; The Rhode Island, 2 Blatchf. 113. See Fabre v. Steamship Co., 1 U. S. App. ——, 53 Fed. Rep. 288. This should be given (1) for the delay in the receipt of the $6,650 up to April 30, 1890; and (2) for the various other items of damage up to the present date.

4. Freight. The amount allowed by the commissioner for the loss of freight is, as I understand, the whole amount of freight that would have become due on the cargo of lumber upon its delivery at Bath, Me., where it is found the cargo would have been delivered in the ordinary course, but for this accident, by the 15th of March, 1890. The evidence shows that this freight would have been earned by the vessel, but was wholly lost through the collision. The libelants are, therefore, clearly entitled to this amount, less the additional expense of the ship in earning it during the 17 remaining days after the accident. As the voyage was broken up by the collision and all items of loss are compensated for, including ship's stores, the ship's expenses for those 17 days, whether for wages, provisions, pilotage, wharfage, or any other expense of delivering cargo in order to earn the freight, should be deducted, in order to arrive at the net loss on freight.

As the earning of this freight, moreover, includes the use of the vessel up to the time of her supposed arrival, and the completion of the delivery of the cargo, viz., March 15, 1890, interest on all the damages allowed should run from that date.

5. The commissioner has found that 75 days was a reasonable time for doing the repairs. Although demurrage as a separate item is disallowed, yet in estimating the cost of repairing there should be included the interest on the $6,650, the value of the wreck, and the amount paid for it. For in order to get the vessel repaired, it was necessary that so much capital should be invested and lie idle during that period. This interest amounts to $83.12, and should be allowed like any other actual outlay in repairing the schooner, when that method of ascertaining her value is adopted.

The exceptions as to the items of chandlery, furniture, ship's stores, and personal effects, are overruled.

Besides interest on the sum of $9,583.12 from March 15, 1890, the libelants are entitled, also, to interest on the sum of $6,650 from the same date until April 30, 1890, when they received that amount as the proceeds of sale.

The other exceptions are overruled.