THE MARIE PALMER. THE JAMES McCAULLEY. THE BLANCHE HOPKINS.

(District Court, E. D. Pennsylvania. October 29, 1909.)

Nos. 76, 77.

1. COLLISION (§ 135*)—DAMAGES—MODE OF ASCERTAINMENT.

Where the value of a schooner before collision was fixed by appraisers, and she was shortly after sold before being repaired, and the repairs made by the purchaser exceeded those necessary on account of collision damage, a proper measure of such damage is the difference between her sound appraised value and her sale price, with interest from the date of collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 289; Dec. Dig. § 135.*]

2. ADMIRALTY (§ 52*)—PAYMENT INTO COURT—INTEREST.

The owners of a vessel, sold pending a suit for collision, which made it necessary to deposit the proceeds in court, on a decree exonerating her from fault, are entitled to recover interest on the amount of such deposit from the vessel adjudged in fault.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 433-436; Dec. Dig. § 52.*]

3. COLLISION (§ 136*)—DAMAGES—DEMURRAGE.

Where a vessel injured in collision is allowed demurrage for the time disabled, based on her average net earnings before and afterward, she is not entitled to add to such sum the wages and cost of provisioning the crew during the time, nor primage of the master under his contract, both of which were necessarily considered in computing her net earnings.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 290; Dec. Dig. § 136.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suits for collision by the schooner Marie Palmer and the schooner Blanche Hopkins, respectively, against the tug James McCaulley. On exceptions to report of commissioner. Report affirmed, as modified.

Howard M. Long, for the Marie Palmer.
Henry R. Edmunds, for the Blanche Hopkins.
John F. Lewis and Francis C. Adler, for the James McCaulley.

J. B. McPHERSON, District Judge. In these two actions, which are founded on the collision between the schooner Marie Palmer, in tow of the tug James McCaulley, and the schooner Blanche Hopkins, the tug was adjudged to be solely at fault ([D. C.] 155 Fed. 894), and the ascertainment of the damages was referred to a commissioner, whose report is now before me upon exceptions. His examination of the questions presented to his consideration was unusually careful and painstaking, and his findings of fact are conceded to be unexceptionable. Indeed, his report is so convincing upon several important subjects originally in dispute that the futility of attack upon it was recognized, and a number of exceptions were formally abandoned at the argument. One or two matters remain about which a few words may be said.

I incline to the opinion that the commissioner's suggestion (Report, page 18) of an alternative method of ascertaining the damage done to the Hopkins should be adopted. The vessel was appraised at $3,000 after the collision and before any repairs were made, and her value before the collision was fixed by the same appraisers at $8,000. She was sold shortly after this valuation for $4,100, and was then thoroughly repaired by her new owners; more work being done upon her than was necessary to make good the damage done by the collision. Under these circumstances, it seems to me that the simplest and most satisfactory method of compensating the persons who owned her at the time of the collision is to award them the difference between her sound value, which I think may fairly be accepted as $8,000, and the value after the collision, which has been ascertained by the sale to be $4,100. Upon this difference, $3,900, interest should be allowed from the date of the collision. The same persons are also entitled to take out of court the $4,100 which has been paid into the registry; but the tug should be charged with interest upon this sum also, although only from the day of sale. In consequence of her wrongful act, it became necessary to convert the Hopkins into money, and it is one of the direct results of her act that the court has been obliged to hold the fund until the end of the litigation, thus preventing those who owned the Hopkins at the time of the collision from using the money meanwhile. The Grapeshot, Fed. Cas. No. 5,703, 2 Woods, 46, is an analogous case, although the facts are not identical.

So far as the Marie Palmer is concerned, only two subjects of complaint are left. The commissioner is said to be wrong, first, because he estimated the rate of demurrage to which she was entitled by averaging her daily net earnings for a certain period before and after the collision, but did not add to the rate thus estimated the daily ex-

penses of the schooner for the wages and provisions of her crew; and, second, because in estimating the same rate he refused to add the average daily primage of the master, amounting to $5.08 per day. As it seems to me, the cases cited in support of the first position do not support it. New Haven Steam-Boat Co. v. Mayor, etc. (D. C.) 36 Fed. 716, was a case in which the owner of a vessel that had been disabled by collision was allowed a certain sum per day as the hire of another vessel that had taken her place, and the court further ruled that in addition to this sum the wages of the crew, who were actually and necessarily occupied on the disabled boat and under pay during the time of her repair, was a proper item of damage. In The Saginaw (D. C.) 95 Fed. 703, the injured vessel was denied demurrage because no actual pecuniary loss was proved; but two items of expense were allowed, $170 for night work in expediting her unloading, and $29.29 for extra cost of boarding passengers during the delay. In Fisk v. City of New York (D. C.) 119 Fed. 256, demurrage was refused to a pleasure yacht because no actual pecuniary loss was shown; but it was held (following The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937) that an allowance should be made for the wages and provisions of the crew, so far as their presence on the yacht appeared to be necessary while the repairs were going on. Evidently, these decisions do not support the Palmer's argument, for in none of them was there an allowance for detention based, as in the present case, upon the net earnings of the vessel for a specified period. Such a basis necessarily takes into account the expenses of the ship, including the wages and food of the crew, and, having affected the computation once, these items should not be specifically allowed for again. As appears from the opinion in The Conqueror, page 127 of 166 U. S., page 516 of 17 Sup. Ct. (41 L. Ed. 937), the net earnings of the vessel may in a given case furnish a proper basis for estimating the damages caused by detention:

"In the absence of such market value, the value of her use to her owner in the business in which she was engaged at the time of the collision is a proper basis for estimating damages for detention, and the books of the owner, showing her earnings about the time of her collision, are competent evidence of her probable earnings during the time of her detention."

This being a proper basis, therefore, and it appearing from the testimony that the master's primage was added to his salary in computing the expenses of the vessel, it is evident that no separate allowance for primage should be made. The master testified that his pay was $40 a month and 5 per cent. of the gross stock or freight, and this primage, which is nothing more than a commission on the freight, is as much a part of the ship's expenses as the stipulated sum of $40 per month. It diminishes the freight, and leaves that much less for the ship. On the subject of primage, see 20 Amer. & Eng. Ency. of Law (2d Ed.) p. 231, § 3; Charleton v. Cotesworth, 21 E. C. L. 408; Carr v. Austin, etc., Co. (C. C.) 14 Fed. 419. I agree with the commissioner that no authority has been shown for the allowance of primage as a specific item of damage in this case.

It is argued, on behalf of the tug, that part of the costs should be charged against the Palmer, because much of the inquiry was taken

up in examining two unfounded claims that were presented on behalf of the schooner, but were rejected by the commissioner. After due consideration of this subject, I am of opinion that the tug's position is well taken, and that the decree should require the Palmer to pay one-third of the costs, including the stenographer's charge and the fee of the commissioner; this fraction to be directly paid by the Palmer, or to be taken out of the sum to which she is entitled against the tug.

With the modifications herein directed, the report of the commissioner is approved.

An allowance of $350 for towage is made to the schooner Blanche Hopkins.