## THE NANTASKET.

(District Court, D. Massachusetts. June 26, 1923.)

### No. 2056.

1. **Collision ⚓136—Demurrage recoverable only on proof of actual pecuniary loss.**

   Under the rule of the American decisions, damages for detention are not recoverable in collision cases without proof of actual pecuniary loss caused thereby.

2. **Collision ⚓136—Demurrage held not recoverable for injury of naval vessel in collision.**

   Where a naval submarine chaser then in use as a government ferry was disabled in collision, and there was no evidence that the government actually lost anything by her inability to continue on the Ferry, or was even inconvenienced thereby, damages by way of demurrage *held* not recoverable in a suit for the collision.

3. **Collision ⚓136—Wages of crew held not recoverable as collision damages.**

   Where a naval vessel, manned by a crew of enlisted navy men, after being disabled in a collision, was not repaired nor again put in service, wages of the crew, who were presumably assigned to other service, *held* not recoverable, as an element of damages, in a suit for the collision.

4. **Collision ⚓134—Damages for injury of naval vessel in collision held measured by cost of repairing, though she was not repaired.**

   Where a naval vessel, injured in collision, was not repaired, but other like vessels were sold for use as vessels, the measure of damages for her injury *held* the amount it would have cost to repair her immediately after the injury, to give her the same value as those sold.

5. **Collision ⚓130—Interest on damages recovered disallowed.**

   Interest not allowed on damages awarded for injury to a naval vessel.

In Admiralty. Suit for collision by the United States against the Steamboat Nantasket. Decree for the United States.

Joseph V. Carroll, Sp. Asst. U. S. Atty., of Boston, Mass.

Blodgett, Jones, Burnham & Bingham and Foye M. Murphy, all of Boston, Mass., for claimant.

MORTON, District Judge. The facts are covered by the agreed statement. Those material to the questions in controversy, which relate only to damages, may be summarized as follows:

It is a case of collision in fog between submarine chaser No. 125, owned by the United States, and the passenger steamer Nantasket, owned and operated by the claimant. It occurred on June 16, 1919, on Boston Harbor, and the "subchaser" was severely injured. She was a naval vessel, one of a large number of similar type built during the war. After having served in Mediterranean waters, she arrived in Boston on May 16, 1919, and was put on district duty. At the time of the collision she was acting as a government ferry, transporting government passengers and freight between Bumkin Island and

⚓For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Commonwealth Pier, both government territory. She had never been used commercially or for profit.

All her officers and crew were enlisted in the navy and continued on naval pay after the collision. No nonnaval vessel was chartered to take her place. The cost of repairs, if they had been made immediately after the accident, would have been $7,038.25, and they would have taken 24 days; if made in January, 1923 (the date of hearing), the cost would have been $5,800, and they would have taken 46 days. It was necessary to tow No. 125 after the collision, and a bill of $118.75 was reasonably incurred for that service. She was laid up after the accident without being repaired, and was later sold in her damaged condition along with a number of vessels for a lump sum, no part of which can be assigned as the sale price of this particular boat. The ferry was discontinued shortly after the accident, and no further use was found for most of the submarine chasers, many of which were sold. During 1919 and 1920, 19 of them were sold at an average price of $11,210.

The government claims as damages: (1) The amount which repairs would have cost immediately after the collision; and (2) demurrage, or damages for deprivation of use.

[1] Taking up first the question of demurrage: It is in effect conceded by the claimant—and I think the concession unavoidable—that under the English cases demurrage, so called, would be recoverable. The Astrahkan, [1910] Probate, 172, seems directly in point. See, also, The Nediana, [1900] A. C. 113, and The Greta Holms, [1897] A. C. 596. The real question is whether these decisions are reconcilable with the established law of this country. In The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937 (1897), a steam yacht was wrongfully seized, and a claim was made for damages for her detention. It was disallowed. The court said (per Brown, J.) :

"It is equally well settled, however, that demurrage will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty." 166 U. S. 125, 17 Sup. Ct. 516, 41 L. Ed. 937. "The difficulty is in determining when the vessel has lost profits and the amount thereof." 166 U. S. 127, 17 Sup. Ct. 516, 41 L. Ed. 937. "It is not the mere fact that a vessel is detained that entitles the owner to demurrage. There must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel." 166 U. S. 133, 17 Sup. Ct. 519, 41 L. Ed. 937. "In other words, there must be a loss of profits in its commercial sense." 166 U. S. 133, 17 Sup. Ct. 519, 41 L. Ed. 937.

The point of view taken in The Conqueror seems quite inconsistent with that taken in the English decisions referred to and with the earlier English cases referred to in the opinion in The Conqueror. Since that case, it has been the general understanding in this country, I think, that damages for detention are not recoverable in collision cases without proof of actual pecuniary loss caused thereby. The Saginaw (D. C.) 95 Fed. 703; The Loch Trool (D. C.) 150 Fed. 429; Fisk v. City of New York (D. C.) 119 Fed. 256; The Mayflower, Fed. Cas. No. 9,345. In La Champagne (D. C.) 53 Fed. 398, it was held that, where a vessel damaged in collision is sold without

repairs, no demurrage is recoverable; and in The A. A. Raven, 231 Fed. 380 at page 388, 145 C. C. A. 374, it is said in the opinion that the government made no claim for loss of profits or loss of use of the dredge.

[2] In the case before me there is no statement that the government actually lost anything by the inability of No. 125 to continue on the ferry, or was even inconvenienced thereby, and there are no facts from which such loss or inconvenience can be inferred. I am therefore of opinion that the rule of The Conqueror, supra, applies, and that no demurrage is recoverable.

[3] The other question is as to the allowance of the cost of repairs, and the wages of the crew pending repairs, in damages. The matter of wages can be shortly disposed of. They were allowed in The A. A. Raven, 231 Fed. 380, 145 C. C. A. 374, upon the ground that the crew was a special crew, brought together and trained to operate the dredge, which could not be replaced, if discharged, without loss of time and expense of retraining. Under such circumstances it was held "reasonable" to hold the crew together for the three weeks required for repairs, and the expense of doing so was held to be part of the direct loss occasioned by the collision. That case is quite distinguishable from this one. Here no repairs were in fact made. No. 125 was never again put in service. There was no occasion to hold her crew together, and it was not held together. The crew was not a specially selected and trained one, but consisted of men enlisted in the Navy, not different, so far as appears, from the regular personnel of the service. They were not specially enlisted for this vessel and were presumably assigned to other duties when released from her. Under such circumstances, no wages are recoverable. In The Marie Palmer (D. C.) 173 Fed. 569, the test is said to be whether the crew "were actually and necessarily occupied on the disabled boat and under pay during the time of her repair," and it was held that the wages and expenses of the crew during the time of repairs were not allowable.

[4] The last question is whether the libelant is entitled to damages for the injuries to No. 125. That damage was sustained by the government cannot be doubted. The only doubt is whether the facts are sufficient on which to base an award. There is no statement of the value of the injured vessel before and after the collision, nor how much her value was depreciated by it. The principal evidence relied upon by the government to show damages is the estimated cost of repairs. The claimant contends that the cost of repairs is evidential on the question of damages only when coupled with evidence that it would be reasonable to repair the vessel under the circumstances, and that there is no such evidence in this case, and the fact seems to have been otherwise. To put an extreme illustration, the case is in effect, according to the claimant's contention, as if a vessel being towed to the boneyard was injured by collision while on her way there.

The facts are meager, but they are those on which the case must be decided. From the average price received for other similar vessels at about that time, I infer that there was a market for them for

use as vessels, and that they were sold for that purpose and not to be broken up. It is clear that No. 125 could not be used as a vessel without being repaired. It seems to me a fair inference, in the lack of evidence to the contrary, which could easily have been produced, that No. 125 was worth before the accident the average price at which similar vessels sold, and that after the accident she was worth that price less the cost of putting her into her previous condition; i. e., less the cost of repairs. If she were not salable as a vessel, that fact could and should have been shown. I am of opinion, on the facts stated, that a prima facie case is made out entitling the government, as owner of the vessel, to damages in the amount which it would have cost to repair her immediately after the accident. This appears to have been the basis on which damages were awarded by Judge Brown in La Champagne (D. C.) 53 Fed. 398, in which the damaged vessel was sold before being repaired.

[5] The government claims interest on the damages. The allowance of interest in admiralty rests in the discretion of the court. It does not appear that the government was delayed in selling No. 125 by reason of the accident, and, under the very unusual circumstances, I do not think that interest ought to be allowed.

Decree accordingly.