**ANDERSON et al. v. ALASKA S. S. Co.**

Circuit Court of Appeals, Ninth Circuit. November 7, 1927.

No. 5050.

1. Shipping ⬅⮕209(2)—Refusal to dismiss petition for limitation of liability of ship company, sued by passengers for breach of contract, held not error, where total claims would exceed value of vessel and freight.

On commencement of 30 separate actions against steamship company by steerage passengers for breach of contract of carriage, refusal to dismiss petition for limitation of liability *held* not error, where aggregate claims of all steerage passengers would have greatly exceeded appraised value of vessel and freight, notwithstanding contract of carriage set 10-day limit for presenting claims, and total claims actually presented were less than appraised value.

**2. Shipping ☞209(2)—Shipowner's right to limitation of liability depends on probable amount of claims at date of filing petition for limitation.**

Right of shipowner to limitation of liability depends on probable amount of claims against vessel at date of filing petition for limitation, not on amount of claims subsequently filed or allowed.

**3. Shipping ☞209(3)—Where claims of passengers against shipowner were controverted, burden was on claimants to establish claims by preponderance of evidence.**

Where claims of steerage passengers against shipowner for breach of contract of carriage were controverted and excepted to, burden of proof was on claimants to establish claims by preponderance of evidence, and denial of motion to allow claims as presented was proper.

**4. Shipping ☞209(3)—Evidence held to sustain commissioner's report, affirmed by court, denying claims of steerage passengers for damages for unsanitary conditions and unwholesome food on board ship.**

In limitation proceeding, involving actions of steerage passengers against shipowner for breach of contract of carriage, in failure to furnish suitable food and for unsanitary conditions on board ship, evidence *held* to sustain report of commissioner, approved by court, denying claims.

**5. Admiralty ☞87—Commissioner's findings will not be disturbed, except for obvious errors of law, or serious mistakes in consideration of evidence.**

Rule is well established that findings of commissioner will not be disturbed, except for obvious error in application of law, or for serious or important mistake in consideration of evidence.

**6. Shipping ☞209(3)—Evidence held insufficient to permit finding of negligence of master or crew in proceeding for death of passenger employee stowing whale oil.**

In limitation proceeding against shipowner, involving claim for death of steerage passenger, employed to assist in loading and stowing whale oil, evidence *held* insufficient to afford basis for finding of negligence of master or crew.

**7. Admiralty ☞105—Decree following commissioner's recommendation, not excepted to below, may not be attacked on appeal.**

Where no exception was raised to commissioner's recommendation in court below, decree following recommendation may not be attacked on appeal.

**8. Shipping ☞209(17/8)—Obligation to pay at least part of costs in limitation proceeding rested on shipowner, notwithstanding denial of claims.**

In limitation proceeding in admiralty, obligation to pay at least part of costs rested on shipowner, notwithstanding claims were denied.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Frank S. Dietrich, Judge.

Limitation proceeding resulting from actions by C. L. Anderson and others against the Alaska Steamship Company, commenced in the state court, in which defendant filed a petition for limitation of liability. After an order restraining the prosecution of actions on claims and the appointment of appraisers, a commissioner was appointed to take proof of claims. Decree affirming the commissioner's report, and exempting and discharging defendant from all loss, damage, or injury arising out of a certain voyage, and claimants appeal. Affirmed.

See, also, 3 F.(2d) 330.

William Martin, of Seattle, Wash., for appellants.

Lawrence Bogle and Cassius E. Gates, both of Seattle, Wash., for appellee.

Before HUNT and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from a final decree in a limitation proceeding in admiralty, dismissing the claims filed, and exempting and discharging the owner of the vessel from any and all loss, damage, destruction, or injury arising out of or upon a certain voyage. The material facts are as follows:

The steamship Victoria, owned by the Alaska Steamship Company, sailed from the port of Nome, Alaska, on August 22, 1924, and, after touching at several way ports in Alaska, arrived at Seattle, Wash., on September 4 of the same year. At the time of leaving Nome the vessel had on board 56 steerage passengers, but other passengers were taken on at different ports, until the vessel had on board 342 passengers, 190 of whom were steerage, when she left Drier Bay, the last port of call in Alaska. On the day after the arrival of the vessel at Seattle, 42 of the steerage passengers filed demands with the steamship company for $250 each for alleged breach of the contract of carriage on the voyage in question. Thereafter 30 of these commenced separate actions against the steamship company in the state court, claiming damages in the sum of $1,000 each for the like breach of contract, and 12 additional actions of the same nature were threatened.

The steamship company thereupon filed a petition in the court below for a limitation of its liability, in the usual form, alleging that, if the claims already in suit and threat-

ened were sustained, all other steerage passengers would have similar claims, and that the aggregate amount of all such claims would exceed the value of the vessel and pending freight. Thereafter an order was made restraining further prosecution of the actions then pending, and of any and all other actions respecting any claim or damage occurring on the voyage, appointing appraisers to appraise the value of the vessel and pending freight, and a commissioner to take proof of claims, with directions to report his findings and conclusions to the court. An appraisement was later made, fixing the value of the vessel and pending freight at $79,820.-61, and 43 claims were filed, aggregating the sum of $45,000.

The appellants moved the court to dismiss the petition in the limitation proceeding and to dissolve the restraining order, for the reason that the petitioner knew at the time of filing the petition that the loss, forfeiture, or damage incurred upon the vessel and voyage would not exceed the value of the vessel and freight pending at the termination of the voyage, and that the monition and restraining order were fraudulently procured, for the purpose of depriving the appellants of the right to an early trial by jury in the state court. The motion was denied.

The appellants then moved the court that their claims be allowed in full, together with interest and costs, and that the same be paid from the fund derived from the surrender of the vessel. This motion was likewise denied.

A hearing was then had before the commissioner on the claims presented, and upon such hearing the commissioner found against the claims of each and every of the appellants, and reported his findings and conclusions to the court. Exceptions were taken to the report of the commissioner, but the exceptions were overruled, and a final decree followed, as above stated.

Error is assigned in the denial of the motion to dismiss the petition for limitation of liability, in the denial of the motion to allow the several claims as presented, in the overruling of the exceptions to the report of the commissioner, and in other rulings to which we will later refer.

[1] It appears from the record that there was a total of 190 steerage passengers on the vessel, and that there was the same breach of the contract of carriage and the same resulting damage to all; so that, if each of the appellants was entitled to damages in the sum of $1,000, the aggregate of the claims of all the steerage passengers would greatly exceed the appraised value of the vessel and pending freight. But as against this the appellants contend, first, that there was a stipulation in the contract of carriage limiting the time for presenting claims for damage to the period of 10 days from and after the arrival of the vessel at destination, and that the other steerage passengers presented no claims within that period; and, second, that the total amount of all claims presented was much less than the appraised value.

There are two answers to the first contention. A number of the steerage passengers seem to have been transported under a general contract with their employers, containing no such limitation; and, in the second place, it was held by the court below, in a case involving the same vessel and voyage, that any such limitation as to claims for personal injuries is unreasonable and void. Blackwell v. Alaska S. S. Co. (D. C.) 1 F. (2d) 334. That decision seems to be supported by the authorities; but, whether sound or unsound, the petitioner could not be denied the benefit of the statute simply because it might have a defense of doubtful validity to some of the claims.

[2] Nor is it material that the aggregate amount of the claims presented was less than the appraised value, because the right of limitation depends on the probable amount of the claims against the vessel at the date of filing the petition, not on the amount of the claims subsequently filed or allowed.

[3] Nor was there any error in the denial of the motion to allow the claims as presented. The claims were controverted or excepted to by the shipowner, and in such cases the burden of proof was on the claimants to establish their claims by a preponderance of evidence, as in any other case.

[4] This brings us to the ruling of the court on the exceptions to the report of the commissioner. In overruling the exceptions, the court said:

"A more extreme case of conflicting testimony it would be difficult to imagine. All the witnesses were interested. Claimants first produced nine of their own number, who testified that the food and sanitary conditions on the ship were shockingly bad. In defense the petitioner called most, if not all, of the ship's officers, who denied substantially all the specific charges of misconduct, and described the food and sanitary conditions as being good. In the guise of rebuttal, claimants then produced seven more of their number, whose testimony was along practically the same lines as that of the first nine."

And, after adverting to the leading char-

acter of the questions propounded to the several witnesses, the court continued:

"In resolving the sharp conflict between the two groups of witnesses the commissioner had the advantage of seeing and hearing the witnesses, and therefore a measure of weight attends his findings. Of great significance, I think, is the fact that, with scarcely an exception, the claimants made no complaint to the ship's officers during the voyage. If, as they now testify, the food was so rotten and so manifestly unfit for human consumption, and if the conduct of the Orientals at the table was so outrageously repulsive, and if the air in the sleeping quarters was so intolerably foul, and the floors in both the sleeping and dining quarters and the toilets were so unspeakably filthy, it is incredible that the passengers would have meekly submitted. There were 88 white passengers in the steerage. In so far as it appears, 46 of them never made complaint to the officers during or after the voyage, and of the 42 who are here asserting claims admittedly no one made complaint during the voyage to any one of the general officers in respect to the food or general sanitary conditions, and but few made any complaint whatever even to a subordinate. They were not timid, unsophisticated women and children; apparently they were men of experience, conscious of their rights, and of a temper to assert them. I am unable to believe that, if such conditions existed as they describe, they would have gone hungry for days and lived in such filth without vigorous and organized protest. The case they make is thought to be contrary to reason and general experience, and upon the whole I am inclined to concur in the commissioner's conclusions. Doubtless there was some gambling in the card games, but here, too, it is thought claimants have greatly exaggerated the effect upon their comfort. The steerage was crowded, but the rules were relaxed, and without serious interference steerage passengers were permitted to frequent and occupy other parts of the vessel ordinarily reserved for passengers of other classes."

[5] An examination of the record leads us to the same conclusion; but, if we were in doubt, we are confronted with the findings of the commissioner, approved by the court, and in such cases the rule is firmly established that the findings will not be disturbed, except for obvious error in the application of the law, or for a serious or important mistake in the consideration of the evidence.

[6] Jack Miles, one of the steerage passengers, was employed by the ship, in the course of the voyage, to assist in loading and stowing a quantity of whale oil in different parts of the vessel. While so engaged he suffered certain personal injuries, and for these he claimed damages in the sum of $1,000, in addition to his claim for damages for breach of the contract of carriage. During the pendency of the action in the court below Miles died, and his widow was substituted as administratrix. After substitution, she asked leave to amend the claim, so as to include an additional claim for damages in the sum of $10,000 for death by wrongful act, claiming that the death of her intestate was caused by the personal injuries and by the treatment to which he had been subjected on the voyage. The commissioner disposed of the claim very briefly, recommending a dismissal for the reason that any injury suffered by the deceased was due to the negligence of a fellow servant. In overruling the exceptions to the report, the court said:

"The evidence upon this claim is extremely meager, and would be doubtfully sufficient to go to a jury in an ordinary action for personal injury. But, if negligence there was, it was the negligence of a fellow servant, for which, under the established rule in this circuit, recovery cannot be had."

Since the decision below, the Supreme Court has held, in International Stevedoring Co. v. Haverty, 272 U. S. 51, 47 S. Ct. 19, 71 L. Ed. 157, that in actions of this kind the negligence of a fellow servant is no defense, and therefore it becomes necessary for us to determine whether the injury was so caused. As said by the court below, the evidence is extremely meager and uncertain, and we might add unsatisfactory.

Miles testified before the commissioner that the drums containing the oil were lowered into the hold; that six men, including himself, were engaged in rolling them back a distance of about 50 feet; that at first they stowed three or four of the drums on end, but the others were simply rolled back to the side of the vessel; that, after rolling them back to the place of stowage, one of the ship's crew looked after them; that they had just rolled one of the drums back, and were returning to the hatch, when the last drum delivered rolled back, striking him on the foot, and causing the injuries complained of. Whether the drum which caused the injury was placed in charge of another employee, or whether there was any one there to take charge of it, or whether it was left to shift for itself, does not appear from the testimony, and in the absence of some proof of negligence on the part of the master, or some

member of the crew, there was no liability. The testimony utterly failed to point out any act of negligence on the part of any one, aside from the charge that there was not sufficient light, and that charge is not sustained by the evidence. For these reasons, we are of opinion that there was an entire failure of proof as to this claim, and that the decree was right, even if based in part on a wrong reason.

There is some discussion in the brief as to the objects and purposes of the statute relating to the limitation of liability, but we fail to see its pertinency here. Nor can we see that any injury or prejudice resulted to the appellants from the failure of the court below to require the appellee to furnish certain information concerning the ship and its passengers and cargo.

[7, 8] The appellee, on the other hand, assigns as error that part of the decree providing "that each of the parties hereto shall pay its own costs." The decree in this regard followed the recommendation of the commissioner, to which, so far as we are advised, no exception was taken by the appellee. The question was not raised in the court below, and should not be considered here. In any event, the obligation to pay at least a part of the costs rested upon the appellee. The Walter A. Luckenbach (C. C. A.) 14 F.(2d) 100.

We find no error in the record, and the decree of the court below is therefore affirmed.