ATCHISON, T. & S. F. RY. CO. v. CALI-
FORNIA SEA PRODUCTS CO.
No. 6341.

Circuit Court of Appeals, Ninth Circuit.
July 22, 1931.

The record contains several assignments of error, of which the first reads as follows:

"The court erred in awarding damages to libelant in any sum whatever for its alleged loss of six days of whale fishing, for the reason that the evidence was too uncertain, speculative and conjectural, to be made the basis of a verdict for damages, and, in support of this, respondent calls attention to the following, as shown by the evidence:

"(a) That the use of a floating whale factory was a new business or enterprise, and wholly untried;

"(b) That the libelant had never before been engaged in whaling in the San Clemente waters;

"(c) That there is no evidence that either the libelant or anyone else ever before had engaged in whaling operations in the San Clemente waters;

"(d) That the only evidence of the probability of capturing any number of whales, within the period complained of, was the number of whales that were subsequently captured in the San Clemente waters;

"(e) There was no evidence that whaling was a seasonable occupation in the San Clemente waters.

"For all of the reasons above urged any damages assessed by the court were in no way warranted by the evidence."

Robert Brennan and H. K. Lockwood, both of Los Angeles, Cal., for appellant.

Harold M. Sawyer, Alfred T. Cluff, Daniel W. Evans, and Webster F. Street, all of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge (after stating the facts):

We are not disposed to disturb the findings of the commissioner with regard to the strictly factual question of whether or not the repairs to the Lansing were done with the greatest expedition, and whether the whaling boats could have left port several days before their actual departure. There was strongly conflicting testimony on both sides of the question, and the commissioner made a decision after a full consideration of the matter. In the absence of palpable error, that finding may stand. But the basis on which the allowance of demurrage in the instant case was made was not merely factual: it was a matter of surmises, a question of determining the "reasonable certainty" of the profits supposed to have been lost, and in such questions of "reasonable certainty of profits" our jurisdiction to consider the matter on its merits is not limited. With regard to the question of the probability of the number of whales that might have been caught in the six days in question and the use of that number as the basis of an award for damages, this court is quite within its powers in reaching a conclusion from the same facts that the commissioner considered in arriving at his conclusions.

The well-established rule governing the award of damages in cases of this category is laid down in The Conqueror, 166 U. S. 110, 125, 17 S. Ct. 510, 516, 41 L. Ed. 937: "* * * Demurrage will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty. * * * There must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel."

The principle is elucidated in The Nantasket (D. C.) 290 F. 813, 814: "It has been the general understanding in this country, I think, that damages for detention are not recoverable in collision cases without proof of actual pecuniary loss caused thereby." (Cases therein cited.)

These cases are an expansion of the principle announced in the earlier case of The Apollon, 22 U. S. (9 Wheat.) 362, 6 L. Ed. 111, in which it was held that the loss of anticipated profits could form no basis for the allowance of demurrage. It is now well settled that the loss of a catch in the case of fishing vessels may be sufficient to warrant demurrage. In the case of The Gleaner, 3

468

Asp. Mar. Cas. 582, the smack Gleaner's nets were fouled and demurrage for four weeks' fishing was allowed on the evidence of a prior catch in the same waters. In the case of the Mary Steele, Fed. Cas. No. 9,226, there was evidence of a catch the morning of the day the accident occurred; in The Resoluto, 5 Asp. Mar. Cas. 93, and Pacific Steam Whaling Co. v. Alaska Packers Ass'n, 138 Cal. 632, 72 P. 161, there was evidence of the catch of other craft during the period of detention. In The Columbia, Fed. Cas. No. 3,035, allowance was made for the catch lost because the accident happened "at the height of the fishing season."

All of these cases, however, must be differentiated from the instant case, in that there there was clearly established evidence of a definite season, of the catch of other vessels in the same waters, or of actual catches on the day of the collision of the vessel injured. None of those factors is present in the instant case; no such criteria for assessing damages are presented to us. There "the waters were well known to contain fish" or the expedition was in "such a state of forwardness that its results may be foreseen." The Mary Steele, supra.

There is nothing in the record in the instant case to show that there had ever been fishing for whales in the waters off San Clemente Island before December, 1926, and certainly no evidence of any such fishing by the appellee herein; there were no other companies fishing in those particular waters at the time the Lansing was in port or after she arrived off San Clemente; the only standard of comparison by which we may judge the number of whales that might have been caught in the six days immediately preceding December 19, 1926, is the number that were subsequently caught in that month and the number caught in the same waters the following year. We do not think it legally sound to generalize from subsequent catches in December, 1926, and December, 1927. The fact that the fishing company claimed 2.69 whales per day for the six days they were delayed, basing their figures on the average catch for the rest of the month of December, and the fact that the commissioner allowed an average of only one whale per day, based on the catch for the six days immediately succeeding their arrival at the waters off San Clemente, shows that the award was in a measure speculative and that there was no legally recognizable standard on which the award could be allowed.

The fact that demurrage in analogous cases is allowed on the basis of anticipated profits and that profits are distinctly the fruits of a commercial venture, brings the award of such claims squarely under the rule set forth in the case of Central Coal & Coke Co. v. Hartman (C. C. A.) 111 F. 96, 98. There the court said: "The anticipated profits of a business are generally so dependent upon numerous and uncertain contingencies that their amount is not susceptible of proof with any reasonable degree of certainty; hence the general rule that the expected profits of a commercial business are too remote, speculative, and uncertain to warrant a judgment for their loss. [Cases cited.] * * * He who is prevented from embarking in a new business can recover no profits, because there are no provable data of past business from which the fact that anticipated profits would have been realized can be legally deduced. [Cases cited.]"

The mere addition of the new equipment, the Lansing, to the whaling fleet did not make the business of catching whales "new" to the appellees, for the latter had had nine years' experience in whaling. But in the light of the record we cannot logically call the venture of fishing for whales in the untried waters off San Clemente Island an established business, the profits of which are reasonably capable of ascertainment. We think it too broad an interpretation of the rule set forth in The Conqueror and Central Coal & Coke Cases, supra, to allow for the loss of anticipated profits on the record of the two catches of 1926 and the one in December, 1927. The commissioner himself, in making the award, said that there was a "reasonable supposition" that whales would have been caught, but that is not the equivalent of "reasonable certainty." He continued, "We are constrained to find that the catch was the same as that six days after arrival at the whaling fields," but we see no necessary connection.

Although confronted with the findings of the commissioner, approved by the District Court, we think that there was obvious error in the application of the law as well as serious mistake in the consideration of the evidence. Anderson et al. v. Alaska S. S. Co. (C. C. A. 9) 22 F.(2d) 532, 535.

Holding that the lower court erred in awarding damages to libelant in any sum, in that "the evidence was too uncertain, speculative and conjectural, to be made the basis of

a verdict for damages," we do not think it necessary to consider the other assignments.

Decree reversed.

WILBUR, Circuit Judge, concurs.