**PITTSTON MARINE CORPORATION,**
Libelant,

v.

**H. A. BRASSERT & COMPANY,**
Respondent.

United States District Court
S. D. New York.

March 30, 1959.

Macklin, Speer, Hanan & McKernan, New York City, for libellant, Martin J. McHugh, New York City, of counsel.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for respondent,

Thomas H. Middleton, David L. Maloof, New York City, of counsel.

DAWSON, District Judge.

This is a motion brought by libelant for an order overruling certain exceptions to the Commissioner's report filed by the respondent, H. A. Brassert & Co.

The action was instituted by the libelant, Pittston Marine Corporation, as the owner of the vessel S.S. Clyde Austin Dunning, against the respondent H. A. Brassert & Company, consignee, to recover damages alleged to have been sustained by said vessel in the discharge of its cargo of iron ore at Chester, Pennsylvania during the month of August, 1948, through the negligent unloading operations performed by the respondent consignee.

After the libel was filed on October 4, 1950, and after an answer had been filed, the proctors for the respective parties entered into a stipulation that a consent decree in favor of the libelant, Pittston Marine Corporation, could be entered against the respondent H. A. Brassert & Company for 90% of the provable items of libelant's damages. The decree referred the matter to John J. Donovan, Esq., as Commissioner, to ascertain and compute the amount of libelant's damages. Hearings were started before Commissioner Donovan, but before completion of these hearings Commissioner Donovan died. On June 8, 1955 the decree was amended to provide for the appointment of Emmett F. McNamara, Esq., as Commissioner, to ascertain and compute libelant's damages. The hearings thereafter were continued and completed before Commissioner McNamara.

Respondent has filed a total of seven separate exceptions to the Commissioner's report. In some respects the exceptions are repetitious of each other and they may be summarized and classified into two groups:

(1) Respondent contends that the Commissioner ignored the testimony of two of respondent's witnesses, Gunn and Prybyson, both of whom claimed that much of the damage listed in the survey was old damage and could not therefore have been sustained during the unloading operations at Chester, Pennsylvania. As a result it is contended that the Commissioner erred in computing the damages occurring at Chester, Pennsylvania, to the extent that he did. Consequently, it is alleged that the Commissioner improperly found that 13½ days (or approximately one-half the time) were devoted to the repair of the damages which occurred at Chester, Pennsylvania (the remaining time allegedly being devoted to the repair of damage occurring elsewhere).

(2) Respondent contends that the Commissioner failed to find that no damage occurred during loading operations at Casablanca between July 19th and July 24, 1948.

Thus the question is not whether the reviewing court might have found differently since in any event this alone would not authorize the court to set aside the findings. 5A C.J.S. Appeal & Error § 1665. The question is whether there was sufficient evidence for the Commissioner to support the findings and reach the conclusions which he did.

## Discussion

It appears that respondent's exceptions are directed wholly to matters of fact and to the weight to be given to testimony. Despite the statements made by the respondent (in the notice of exceptions and the brief which was filed on behalf of the respondent) that the testimony of the two witnesses Gunn and Prybyson is uncontradicted, a review of the record shows that there is testimony to support the Commissioner's findings.

The testimony of Willis H. Duff, Chief Mate on the vessel during the period in question, showed, on page 84, that he inspected the ship following the discharge of coal in Marseille, France, in July, 1948. Mr. Duff testified that he observed the crane causing damage during the unloading operations at Chester, Pennsylvania, and thereafter was present during the survey at the Kensington Shipyards and observed all the damage in the cargo

holds (page 99). Therefore, Mr. Duff could testify as to the damage which was caused by the crane at Chester, Pennsylvania, since he not only observed the unloading operations at Chester, Pennsylvania, but also inspected the ship for damage both before and after the discharging operations at Chester.

Furthermore the testimony of Alexander P. Stewart, who conducted the survey of the vessel after the unloading operations at Chester, Pennsylvania, supports the Commissioner's findings. Mr. Stewart testified, at page 212, as follows:

"Q. Are those your findings Mr. Stewart? A. Yes.

"Q. Does that consist of the full extent of the damage which you found? A. The full extent of the stevedoring damage to the cargo holds *that occurred at Chester, Pennsylvania, at that time.*

"Q. When you made your examination did you take into consideration such damage which existed on respondent's exhibits 'B' and 'C'? A. We did.

"Q. Which is damage which occurred in Marseille, France in July, 1948? A. Yes." [Emphasis supplied.]

Mr. Stewart also indicated that his survey took into consideration whether the damage was old or new damage. In answer to a question on cross-examination, Mr. Stewart said at page 249 of the transcript:

"A. That would be nice to know, but in the present case I have already stated I noted a lot of this damage being done, and after it has been done it is quite easy to ascertain the length of time, within a day or two, of when the damage was done. Metal leaves a clear and fine scar that stays bright for a few days, an old distortion you can tell by the rust on it and the way it has colored up. New distortion struck by a heavy bucket leaves a bright scar. Inside of a day or two, a film

of rust comes over it which is distinctive in color from the rest of the area."

This indicates that Mr. Stewart in his survey did take into consideration whether the damage was old or new.

In addition, both Gunn and Prybyson were cross-examined and the basis for their conclusions was questioned. The credibility and weight to be given to their testimony was a matter to be determined by the Commissioner. Although the testimony of Gunn and Prybyson was conflicting with that of the Chief Mate and Stewart, the findings of the Commissioner should stand in the absence of palpable error. Atchison, T. & S. F. R. Co. v. California Sea Products Co., 9 Cir., 1931, 51 F.2d 466.

The respondent criticizes the Commissioner for failing to find that no damage occurred to the holds of the ship during loading operations at Casablanca. However, both the Chief Officer and the Master testified that no damage occurred at Casablanca.

### Conclusions

Therefore, from a consideration of the record as a whole, there is certainly a basis for the findings made by the Commissioner. The problem was essentially the amount of the weight to be given to the testimony of the various witnesses. This matter is in the province of the Commissioner's judgment and discretion and it cannot be said from the record that the findings are unreasonable. The Commissioner actually had an opportunity to observe the witnesses who testified and consequently made his independent judgment on their reliability and credibility. The findings or the report of a Commissioner will not be disturbed where they are reasonably supported by the evidence. See, 5A C.J.S. Appeal & Error §§ 1665, 1666.

Under the circumstances this Court grants the motion to overrule the exceptions filed by the respondent and confirms the findings of the Commissioner. So ordered.