### THE WINFIELD S. CAHILL. THE JOHN L. WADE. THE IRA M. HEDGES.

(Circuit Court of Appeals, Second Circuit. May 14, 1919.)

No. 190.

1. COLLISION ⬤⟿95(2)—FAULT OF TUG WITH TOW.

Steam tug towing 12 boats in three tiers, with a boat tailing on the last tier, which on rounding the Battery, in turning from the channel between the Battery and Governor's Island, to go into East River at New York, was swept away by the tide because she had not enough power for her tow, and so presented the end of her tow to a steamship skirting the shore of Governor's Island in a position that rendered collision inevitable, *held* at fault.

2. COLLISION ⬤⟿95(2)—FAULT OF TUGS.

Tugs in charge of a steamship, which collided with starboard boat in the last full tier of another tug's tow through the fault of such other tug, *held* to have done all they could, and as soon as they should have, to avoid collision, having had no reason to anticipate the lack of power of the other tug, which caused the collision in conjunction with the tide, and having reversed as soon as they saw the tow swing down upon them.

3. COLLISION ⬤⟿125—DAMAGE—PROBABILITY OF EARNINGS.

Evidence *held* to show that there was not even a reasonable probability of a steamship injured by a collision earning any charter money under the charter in question, either when she was in collision, or during the three-day period of her repairs; her owner having been "blacklisted" by the United States for reasons of state during the war with Germany and Austria.

4. COLLISION ⬤⟿136—DAMAGES—LOSS OF USE.

Damages for loss of use of a vessel injured in collision cannot be awarded because she might have made some profit. The question is not of the possibility of employment, but of actual loss; not what possibly could have been made, but what would have been made.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel in admiralty by the Seguranca Steamship Corporation against the steam tug Winfield S. Cahill and James Brooks, its claimant, and the steam tug John L. Wade and William J. Wade, its claimant, and Edward M. Timmins and the Cornell Steamboat Company, and by Robert M. Woodburn against the steam tug Ira M. Hedges and the Cornell Steamboat Company, wherein William J. Wade, as owner of the steam tug John L. Wade, petitions for limitation of liability

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

against the Cornell Steamboat Company, and James Brooks, owner of the steam tug Winfield S. Cahill, petitions for limitation of liability also against the Cornell Steamboat Company. From the decree, the Cornell Steamboat Company appeals. Decree modified and affirmed.

In daylight and fair weather, with the tide running strong ebb, the steamship Seguranca started, without motive power of her own, and in charge of three tugs (the Wade, the Cahill, and the Timmins) from the anchorage near Bedloe's Island to a point in the East River. The master of the Timmins was in charge of this operation, his owners having made a contract on the subject with the steamship's agents. The Cahill went ahead on a short hawser; the Wade and Timmins were placed one on each side of the steamship. The master of the Timmins was on the bridge of the Seguranca. In this manner steamship and tugs proceeded across the Upper Bay until they were as near to Governor's Island as was safe, and were skirting the shore of said island slightly below Castle William when the tug Hedges with a tow of about 12 boats, in at least three tiers and a boat tailing on to the last full tier, all upon a hawser of at least 30 fathoms, was seen coming down the North River. The Hedges belongs to a well-known line, and any man experienced in the navigation of this harbor knew that she was intending to round the Battery into the East River.

Against the tide the Seguranca and her tugs were making not over a knot and a half, and probably less. For her, backing was not only difficult, but dangerous, owing to the proximity of the shore on the starboard side. The Hedges had the tide with her, but had no helper; another tug had been in attendance, but had gone away with a boat taken from the tow. When these two flotillas observed each other, the Hedges (had it been night) would have shown the Seguranca her green light only, while the Seguranca had the Hedges at least 2½ points on her port bow.

The Hedges had proceeded approximately halfway across the channel between the Battery and Governor's Island before she turned to go into the East River. The moment she did so and became broadside to the tide, she was helplessly swept down by the same; and even after getting headed squarely into the tide she could do no more than stand still by the land, and even that is doubtful. Thus the tail of her tow was in the Seguranca's way. The tugs alongside the latter vessel reversed, and the Cahill for her own safety ceased towing and got out of the way. Collision ensued between the steamship's stem and the starboard boat in the last full tier of the tow.

Both vessels in collision received injury, and actions were begun by the Seguranca against the owners of the Timmins and Hedges and the tugs Cahill and Wade, and by the owner of the injured barge against the Hedges alone. By invoking the fifty-ninth rule all the parties were ultimately brought in, in respect of all the damage claimed, and the Wade and Cahill, denying all liability, nevertheless took proceedings in limitation. All these matters were tried at one hearing, and one decree entered, in which the court below held the Hedges at fault (apparently) for obstructing the path of the Seguranca, but allotted one-fourth of the damages against the Cahill and one-fourth against the owners of the Timmins, upon the ground that they should have sooner perceived the difficulties and dangers arising from the inability of the Hedges to control her tow in the tideway. From this decree the Hedges alone appealed. In this court, however, both the Cahill and the owners of the Timmins claimed freedom from fault, and all parties against whom any share of loss had been assessed objected to the allowance of "demurrage" or damages for loss of use of the Seguranca.

Kirlin, Woolsey & Hickox, of New York City (Robert S. Erskine, of New York City, of counsel), for the Hedges.

Burlingham, Veeder, Masten & Fearcy, of New York City (Chauncey I. Clark and George W. Whip, both of New York City, of counsel), for owners of the Timmins.

Foley & Martin (George V. A. McClosky and William J. Martin, both of New York City, of counsel), for the Cahill.

Park & Mattison, of New York City (Henry E. Mattison, of New York City, of counsel) for owner of injured barge in tow.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for the Seguranca.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] On the facts above recited we agree with the court below that the fault of the Hedges is entirely plain. When the vessels were in such position that they were bound to navigate with due regard to each other's rights, they were admittedly on crossing courses, with the Seguranca the privileged vessel. It may be assumed as plain that the Hedges did not intend to continue such crossing course, but to turn into the East River in such manner that she would be either parallel with the Seguranca or ahead of her according to the rapidity of such turn. It is argued that she did make the turn, became the leading vessel, and put the Seguranca in the position of one overtaking. It is a sufficient answer to this to say that the steamship was proceeding so slowly that she could not overtake the Hedges, if that vessel had been able to navigate across or against the tide in the common and accepted sense of that term.

We find that this disaster occurred solely because, when the Hedges ported to go into the East River and presented the broadside of herself and her tow to the tide, she was helpless, because she had not enough power for the business in hand. Before collision actually happened she had turned herself so as to be heading almost, if not quite, toward the Battery, but whether in this position she was able to hold the tow against the tide is a point not worth discussion, for by that time (and events occurred with great rapidity) she had presented the end of her tow to the Seguranca in a position that rendered collision inevitable.

[2] As for the tugs in charge of the Seguranca, we think they did all they could, and did it as soon as they should. They were not apprised of and had no reason to anticipate the feebleness of the Hedges. As soon as they saw how the tow was swung down upon them, the Cahill ceased to haul ahead and the tugs alongside reversed, but it was too late; and the Hedges had made it too late by not trying to port and go into the East River as soon as she could—she never turned at all until unnecessarily near to Governor's Island.

The difficulties of navigating in the narrow waters between Governor's Island and the Battery are well known; the necessity of having sufficient power to meet contingencies reasonably to be expected was adverted to in The Concho (D. C.) 58 Fed. 812, affirmed 63 Fed. 1023, 12 C. C. A. 4. The dangers there alluded to have assuredly grown no less in the quarter century that has elapsed since that case was decided.

[3] The Commissioner awarded to the Seguranca damages for three days' loss of use while undergoing repairs caused by this col-

lision. When injured the Seguranca was under charter; she never entered upon the performance of that engagement because (as we find from the record) it was obvious that the governmental authorities of the United States and of the nations associated with it in the war with Germany and with Austria would not permit the steamship to get a cargo; her owner was "blacklisted" for reasons of state. It is argued that, while all this is true, it was not obvious that it was to be true during the three days for which damages for loss of use has been awarded. It is said that, if the Seguranca had not been injured, she would have entered upon the performance of this charter party. In point of fact she made no attempt so to do, but after being repaired for damage stayed at the repair shop and was extensively overhauled for reclassification; meanwhile she was sold, so as to get rid of the "blacklisted" owner, and the charter party was ultimately canceled.

[4] We hold it established as matter of fact that there was not even a reasonable probability of the Seguranca earning any charter money under the charter in question, either when she was in collision or during the three day period of her repairs. On this finding the law is not doubtful. Damages for loss of use cannot be awarded because the injured vessel might have made some profit. The question is not of the possibility of employment, but of actual loss; not what possibly could have been made, but what would have been made. The North Star, 151 Fed. 168. 80 C. C. A. 536.

The fact, that a tort had been committed only calls in play the rule of restitutio in integrum; so that, where injured cargo nevertheless brought the full market value, the tort-feasor was not called upon to pay damages in respect thereof. The Dunbritton, 73 Fed. 352, 19 C. C. A. 449. The view we entertain of the facts herein renders unnecessary any discussion of the unusual manner in which the damages were in the court below allotted or apportioned.

Let the decree appealed from be modified, and the Seguranca and Woodburn recover their full damages, with costs of the District Court, against the Hedges. Let the proceedings in limitation on the part of the Wade and the Cahill be sustained, and both tugs exonerated from liability. As against the answering claimants, let the petitioners recover trial costs (but not expenses of limitation) in the District Court. Let the libels as against the owner of the Timmins be dismissed, with costs of the District Court. There will be no costs in this court, because the parties whom we have released altogether took no appeal, and the single appellant has prevailed only partially; i. e., in respect of the so-called demurrage claim. The Anna W., 201 Fed. 62, 119 C. C. A. 396.