## THE PRISCILLA.

District Court, D. Massachusetts. August 2, 1928.

No. 3477.

1. Collision ⟲136—Libelant, delivering all oil contracted for while injured barge was in operation and being repaired, could recover only necessary additional expenses and loss of profits.

Libelant, delivering all oil it had contracted or had chance to deliver during entire time that barge injured in collision was in operation and being repaired, could recover only additional expenses and loss of profits it would have earned, but for injury.

27 F.(2d)—58½

2. Collision ⟲123—Difficulty in proving loss of profits because of collision does not require decision of doubtful questions in favor of libelant, who has burden of proof.

Difficulty in proving damages for loss of profits as result of collision does not require court to view matter leniently and decide doubtful questions in libelant's favor, but burden of proof is on libelant in such cases, as in all other tort cases.

3. Collision ⟲125—Damages, as for loss of profits, because of collision, cannot be recovered, unless established with reasonable certainty.

Damages, as for loss of profits, resulting from collision between vessels, cannot be recovered, unless they are established with reasonable certainty.

4. Collision ⟲128—Criterion for recovery of profits lost because of collision is not what might have been earned, but what would have been earned.

The criterion for recovery of profits lost as result of collision between vessels is not what profits might have been earned, but what would have been earned.

5. Collision ⟲125—To recover profits lost, circumstances must be shown with sufficient particularity to prove that injured barge could have been spared from libelant's fleet, and would probably have found employment.

To recover profits lost because of injury to barge in collision, attendant circumstances must be shown with sufficient particularity to prove that libelant's accustomed use of barge was such that it could have been spared from its fleet and would probably have found employment.

6. Collision ⟲123—Burden is on libelant to prove expense caused by injury to barge in collision by direct evidence, without conjecture.

Libelant may recover for any expense to which it was put by reason of injury to its barge in collision, but the burden rests on it to prove such expense by direct evidence, without conjecture.

7. Collision ⟲129—Libelant cannot recover expense of substituting idle vessel for vessel injured in collision.

Libelant cannot recover expense of substituting an idle vessel, not kept for use in emergencies, but merely part of owner's regular fleet, for which there is not sufficient employment to keep her busy, for a vessel injured in collision.

8. Collision ⟲129—Libelant held entitled to extra expense of towing barge substituted for injured barge to place of collision and back.

Libelant held entitled to recover extra expense of towing barge, substituted for barge injured in collision, to place of collision and back, where evidence showed that barge could not have been hired at such place, except at very great expense, if at all.

**9. Collision ⬅️136—Libelant held not entitled to amount of penalty agreed on for delay in repairing barge as damages for injury thereto.**

Libelant *held* not entitled to recover amount of penalty agreed on for delay in repairing barge as damages for injury thereto in collision.

**10. Collision ⬅️129—Fees of underwriters' surveyors held not elements of damage for injury to barge in collision, where libelant had its own representative at survey.**

Where libelant had a representative of its own at survey of barge injured in collision, fees of surveyors representing underwriters when barge was first hauled out for survey were not elements of damage.

**11. Collision ⬅️135—Libelant held not entitled to amount, based on theory that barge was damaged three-eights of value, as expense of more frequent filling necessitated by reduced carrying capacity after collision.**

Libelant *held* not entitled to amount, based on theory that barge was injured three-eights of its value, for expense of filling her three times, instead of only twice, because of reduced carrying capacity after collision.

**12. Collision ⬅️129—Libelant held entitled to expense of hauling out injured barge to determine its condition.**

Libelant *held* entitled to recover expense of first hauling out of barge injured in collision to determine its condition.

**13. Collision ⬅️129—Libelant held entitled to canal tolls and pilotage for towing barge substituted for injured barge.**

Libelant *held* entitled to recover canal tolls and pilotage as necessary expense of towing barge substituted for barge injured in collision.

**14. Collision ⬅️134—Libelant held entitled to cost of painting bottom of injured barge while in dry dock undergoing repairs.**

Libelant *held* entitled to cost of painting bottom of barge injured in collision, while in dry dock for 16 days undergoing repairs, as against contention that painting should have been done in usual course of things, and hence was not necessitated by injury.

In Admiralty. Libel by the Mexican Petroleum Corporation against the steam tug Priscilla, claimed by the Doane Towboat Company, which filed exceptions to an assessor's report of damages. Certain items allowed, others disallowed, and the case remanded to the assessor, to report his findings on the remaining items.

Edward S. Dodge, of Boston, Mass., Nathan W. Thompson, of Portland, Me., for libelant.

Otto Wolff, Jr., and Lewis, Adler & Laws, all of Philadelphia, Pa., and Frederick Foster, of Boston, Mass., for respondent Atlantic Refining Co.

Stephen R. Jones and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for claimant and petitioner Doane Towboat Co.

LOWELL, District Judge. On exceptions to the report of an assessor. After the former hearing in this case the matter was referred to Mr. Theodore Hoague as assessor, to determine and report the damages to the libelant resulting from the collision. The evidence before the assessor was taken down by a stenographer; I have given it careful consideration.

The libelant, the Mexican Petroleum Company, is a corporation engaged in the delivery of fuel oil to vessels in Boston, New York, and elsewhere. Barge No. 2, belonging to it, was injured in a collision on March 1st. She was hauled out for a survey a few days thereafter, when it was found that she could continue her service with a reduced carrying capacity, which she did until March 15th, when libelant's barge No. 25 was sent over from New York to take her place and barge No. 2 went to the Atlantic Works for repairs.

For convenience in discussing the report of the assessor, the items in Mr. Hoague's report are summarized as follows:

Items 1 to 4—Preliminary survey and minor repairs.

Items 5 and 6—Services of surveyors representing insurance companies at the survey.

Items 7 to 10—Small furnishings and the clothing of the crew.

Item 11—Extra cost of operating barge No. 2 after the collision, until she was hauled out for repairs.

Items 12 and 13—Charges for painting the bottom of barge No. 2 while she was in the dry dock.

Item 14—$1,250 for services of tug Pan-Am in towing barge No. 25 from New York and back.

Items 15 and 16—Canal tolls and pilotage through the canal.

Item 17—Detention of barge No. 2 while on Bethlehem dry dock, 1 day.

Items 18 to 20—Damages for use of substitute barge No. 25, and for the time spent by her in coming from and returning to New York, $3,046.50.

Item 21—Atlantic Works contract for $4,500, less $100 per day for excess over 10 days—5 days, $500. Amount awarded, $4,000.

[1] Underlying all the evidence in this case is the fact that the libelant delivered all the oil which it had contracted to deliver, or had a chance to deliver, during the entire time while barge No. 2 was in operation, and while she was being repaired. There was no direct damage, therefore, to the libelant, and it is entitled only to any necessary additional expenses, and to the loss of

profits which it would have earned, but for the injury to the barge.

[2-5] The libelant contends that, if there is any difficulty in proving damages for loss of profits as a result of a collision, the court should look at the matter with a lenient eye, and decide any doubtful questions in its favor, as a wrongdoer cannot complain if he is treated sternly. This highly moral sentiment in pleasing to the mind, but is not supported by the law. The burden of proof must be sustained by the plaintiff in this class of cases as in all others, where damages are to be assessed for the results of a tort. Roscoe, Measure of Damages in Maritime Collisions (2d Ed.) p. 5; The Clarence, 3 W. Rob. Adm. 283. Damages cannot be recovered, unless they are established with reasonable certainty. The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937; The Nantasket (D. C.) 290 F. 813. The criterion is, not what profits might have been earned, but what would have been earned. The North Star (C. C. A.) 151 F. 168; The Winfield S. Cahill (C. C. A.) 258 F. 318.

It is not enough to say that, if we had chartered our barge or tug, we could have gained large sums; but the attendant circumstances must be shown with sufficient particularity to prove that the use which the libelant was accustomed to make of its barge and tug was such that they could have been spared from its fleet and would probably have found employment. See cases cited supra. Such evidence is almost entirely lacking in the case at bar; we are left to conjecture.

Cases like the present are rendered more difficult of decision by the unfortunate use in the authorities of the word "demurrage" to characterize the recovery for loss of profits, owing to the detention of a vessel while undergoing repairs. Roscoe, op. cit. p. 86; The Conqueror, 166 U. S. at page 125, 17 S. Ct. 510, 41 L. Ed. 937.

When a vessel is delayed in loading or unloading—"demurrage" in its proper sense —there is almost always some loss of profits; this is not so when a ship not under charter is laid up for repairs. The Clarence, ubi supra. The libelant begins with no presumption in its favor. It must build its structure of proof from the ground up, and does not start with its foundations laid.

[6] The rules of law governing damages in this kind of a case are the same as in any case not arising out of contract. The Baltimore, 8 Wall. 377, 19 L. Ed. 463; The Cayuga, 14 Wall. 270, 20 L. Ed. 828. And the plaintiff must sustain the burden of proof.

In the case at bar the libelant must prove its damages, which cannot be awarded from the mere conjecture that the vessel might have been earning profits. The Golden Age (C. C. A.) 23 F.(2d) 486, 1928 A. M. C. 376. It may recover for any expense to which it was put, but there also the burden rests on it. The Clarence, ubi supra. I have laid stress on this aspect of the case at bar, as in my opinion very little direct evidence of loss was introduced before the assessor; the libelant relying on the opinion of experts as to what might have happened. For instance, the cost of operation of the libelant's tug when it towed barge No. 25 to Boston was not shown. The tug towed another barge part way to Boston and part way back again. Perhaps it was convenient for the libelant to have to tow barge No. 25 as far as Stamford, and the towing of this other barge may explain why barge No. 25 was not sent over for two weeks. This is, however, mere conjecture. As to the use of barge No. 25, it was not shown that she would have been let out for hire in New York, or have been hauled out for repairs during the time she was idle. It was not shown that the libelant had ever let out any of its barges. This is still all conjecture.

[7] The argument in this case related especially to the question of spare vessels and idle vessels. There are two cases, relating to ferryboats, where a spare vessel had been put in commission to take the place of one which was injured. The Cayuga, Fed. Cas. No. 2537, on appeal 14 Wall. 270, 20 L. Ed. 828; The Favorita, Fed. Cas. No. 4695. See, also, New Haven Steamboat Co. v. The Mayor, etc. (D. C.) 36 F. 716; The Emma Kate Ross (C. C. A.) 50 F. 845.

In these cases the courts allowed the libelant as damages a sum for the use of the spare vessel, on the proper theory that, as the libelant was at the expense of keeping this spare vessel always ready for emergency, in order to carry out its public duty of ferrying passengers, it was entitled to recover for this expense. An idle vessel, however, in my opinion, raises quite a different question. Such a vessel is not kept for use in emergencies, but is merely a part of the regular fleet of the vessel owner, for which there is not sufficient employment to keep her busy. If such a vessel is substituted for an injured one, there is often no extra expense to the libelant. See The Golden Age, ubi supra, and Roscoe, op. cit. p. 96.

[8] I have already said that there is no sufficient evidence in this case to justify a recovery for the possible chartering of barge

No. 25. This disposes of several items in the assessor's report. Another important branch of the case relates to the use of the tug Pan-Am in towing barge No. 25 to Boston and back. There should be some allowance for this service, as the evidence shows that a barge could not have been hired in Boston, except at very great expense, if at all. There is no evidence as to what the tug would have been doing, if she had not been engaged in this service. The assessor awarded the sum of $1,250 as being the fair value of the use of such a tug during the time she was employed in towing barge No. 25 and during about two days when she was delayed by bad weather. I am of the opinion that what the libelant is entitled to is the extra expense to it of towing the barge to Boston and back, and, as the libelant is entitled to some recovery, I shall send back the case to the assessor and allow the libelant to introduce evidence as to any extra expense arising from the use of the tug.

[9] Another important item is the matter of repairs to barge No. 2. In the contract with the Atlantic Works there was the agreement that there should be a penalty of $100 for every day over 10 days. The repairs were not completed for 15 days, and the total bill was $4,500. The libelant did not take advantage of the penalty clause, and the assessor has ruled—correctly, as it seems to me—that from this amount the sum of $500, for the five days' delay in repairing, should be deducted. Roscoe, op. cit. p. 82.

[10] There remain only a few items. The first two relate to fees awarded surveyors who represented underwriters at the time barge No. 2 was first hauled out. It appeared in evidence that the libelant had a man of its own at the survey, and under these circumstances I rule that the surveyor's fees which the assessor allowed were not elements of damage. New Haven Steamboat Co. v. The Mayor, etc. (D. C.) 36 F. 716; The Benjamin A. Van Brunt (D. C.) 3 F.(2d) 655.

[11] Another matter related to damages for the reduced carrying capacity of barge No. 2 while she was in service at Boston between March 1st and 15th. Her capacity before the collision was 8,400 barrels; after the collision about 5,000 barrels. During the time she operated, she delivered about 13,000 barrels of oil. Ordinarily this could have been done by filling her only twice, but her injury required the filling to be done three times. There is no direct evidence as to what this cost, and the assessor awarded $50. I am not satisfied with this amount, which seems to me excessive, and, as the case must go back on another phase of it, the libelants may have the opportunity of proving the extra expense. The libelant's theory of recovery in this connection was that the barge had been injured three-eights of its value, and that its value was a very large sum of money, so that the figure it insisted on was $800. This method of computing damages is altogether fanciful, and, as I have already said, depends on a theory of damages in such cases which is not the one allowed by law. The Wm. N. Hoag (D. C.) 101 F. 846; The Saginaw (D. C.) 95 F. 703; The Clarence, 3 W. Rob. Adm. 283.

[12] Among the items not objected to was the expense of the first hauling out to determine the condition of the barge. This is approved.

Items 1 to 4 are approved, as are also items 7 to 10. These items were not objected to.

[13] Items 15 and 16, for canal tolls and pilotage, allowed by the assessor, are approved as a necessary expense of towing barge No. 25 to Boston.

[14] The cost of painting the bottom of the barge was objected to, on the ground that this should have been done in the usual course of things, and therefore was not an expense made necessary by the injury. I agree with the assessor that it was necessary to paint the bottom of barge No. 2 while she was on the dry dock, as she was out of the water for 16 days, and that this expense would not have been necessary, unless she had been hauled out to undergo repairs. The allowance of these items, 12 and 13, which total $216.80, is approved.

The result is that items 1–4, 7–10, 12, 13, 15, 16, and 21 are allowed, items 5, 6, 16, and 17–20 are disallowed, and the case is sent back to the assessor, to report his findings on item 11, relating to the extra expense of operating barge No. 2 in her injured condition, and item 14, the use of the tug Pan-Am in towing barge No. 25 from New York and back.