## THE CELTIC.

## UNITED STATES v. OCEANIC STEAM NAV. CO., Limited.

## OCEANIC STEAM NAV. CO., Limited, v. UNITED STATES.

### Nos. 10028, 10527.

District Court, E. D. New York.
Jan. 15, 1931.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Charles E. Wythe, Sp. Asst. to U. S. Atty., of New York City, of counsel), for the United States.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Adrian J. O'Kane, both of New York City, of counsel), for the Celtic.

CAMPBELL, District Judge.

The delay in ascertaining the damages in these suits is not mine, as the stipulation and briefs in the above-entitled suits were not submitted to me until the last week.

Interlocutory decrees for one-half damages were entered in each of the above-entitled suits and the ascertainment of damages referred to a Commissioner, but, the parties having agreed to stipulate the facts, on their consent the decrees were amended as follows: "Ordered that the amount of damages sustained by the respective parties be ascertained and determined by the Court and that a final decree may be entered herein in accordance with such determination."

A stipulation as to the damages of the respective parties has been presented, but with the exception "that the steamship Celtic as a result of the collision was necessarily out of service for a period of 26 days and that, by reason thereof, the Oceanic Steam Navigation Company, Ltd., her owner, sustained a daily net loss of £315.2.8 (or $1528.1995), amounting to $39,733.19 with interest thereon to be calculated at 4 per cent from March 12, 1927, less such portion, if any, of passenger fares earned by the Baltic by carrying passengers booked on the Celtic for the voyage she lost by reason of the collision, as is determined by the court to be legally deductible from the Celtic's aforesaid detention."

The question, therefore, now presented to this court is whether any deduction should be made from this detention rate.

The contention of the government is that the passage money earned by the Baltic for carriage of passengers originally booked for the Celtic should be deducted from the Celtic's detention rate of £315.2.8 because both vessels were owned by the Oceanic Steam Navigation Company, Limited.

In support of this contention the government claims that damages allowed to an injured vessel for detention by reason of a collision are confined to her actual pecuniary loss occasioned thereby, of which she has the entire burden of proof, and cites: The Conqueror, 166 U. S. 110, 125, 17 S. Ct. 510, 41 L. Ed. 937; The Potomac, 105 U. S. 630, 26 L. Ed. 1194; Cuyamel Fruit Co. v. Nedland (C. C. A.) 19 F.(2d) 489; Newtown Creek Towing Co. v. City of New York (C. C. A.) 23 F.(2d) 486; The North Star (C. C. A.) 151 F. 168; The Winfield S. Cahill (C. C. A.) 258 F. 318; Aktieselskapet Bonheur v. San Francisco & P. S. S. Co. (C. C. A.) 287 F. 679; The Nantasket (D. C.) 290 F. 813; The Wolsum (C. C. A.) 14 F.(2d) 371, 377; The Priscilla (D. C.) 27 F.(2d) 921, 923.

Undoubtedly the law has been correctly stated by the government, and has been so held in the cases cited.

In none of those cases, however, was the question here presented considered, and in the cases at bar the stipulation is sufficient to sustain the owner's burden of proof, the only question being whether there shall be a deduction made from the stipulated amount by reason of the fact that certain passengers originally booked on the Celtic were subsequently carried on the Baltic, another vessel owned by the same owner.

It seems quite clear to me that the voyages of the Celtic and the Baltic were separate voyages, and that when the Celtic's voyage was abandoned, the adventure was at an end, and the fruits of that adventure, the passage money of her passengers, lost for all time.

If some of the passengers took passage on the Baltic, the passage money so earned by her had no relation to the Celtic, and, in case of loss or damage caused by the Baltic and limitation of liability had been sought, the whole amount of the passage money of such passengers would have had to be accounted for. The Scotland, 105 U. S. 24, 26 L. Ed. 1001; Id., 118 U. S. 507, 6 S. Ct. 1174, 30 L. Ed. 153.

That the net profits on the passage money paid for passage on the Baltic, by passengers who were originally booked on the Celtic, is not deductible is clearly shown by the decisions of the courts, which have held that the owner is entitled to damages for detention of the damaged boat, even where it substitutes another boat owned by it.

In The Cayuga, 5 Fed. Cas. 329, at page 331, No. 2,537, affirmed 14 Wall. 270, 20 L. Ed. 828, the lower court said: "The principle of indemnity is uniformly recognized as just, and its measure must be the same, whether a substitute is furnished by the libellant or procured from another."

In The Favorita, 18 Wall. 598, at pages 603, 604, 21 L. Ed. 856, the court said: "The appellants object to the allowance of demurrage by the commissioner on the ground that the .ferry company suffered nothing by the loss of the use of the Manhassett while undergoing repairs, because her place was supplied by a spare boat kept for emergencies, and which would otherwise have been idle. This subject was fully discussed in the case of The Cayuga by the learned circuit judge of the second circuit, who sustained a similar allowance, and as that case was affirmed on argument in this court, and his views adopted, we must consider the question as no longer open to discussion."

In Coffin v. The Osceola (D. C.) 34 F. 921, this court said: "The exceptions in this case cover two questions which deserve attention: First, whether the libelants can recover demurrage for the detention of their boat while undergoing repairs, when it appears that the work that the injured boat would have done but for the collision was done by another boat owned by the libelants, and which was at the time without other employment. The commissioner allowed demurrage, and I think he was right."

In The Providence, 98 F. 133, at page 136 (C. C. A., 1st Cir.) the court said: "The owners of the Providence kept another boat for winter service, with which they immediately replaced the Providence for the balance of her season. In this respect, the case at bar follows The Cayuga, where the fact that her owners substituted another ferryboat, which they kept for emergencies, did not defeat the allowance of demurrage."

In The State of California (C. C. A.) 54 F. 404, at page 407, the court said: "The fact that another vessel belonging to the same owner was used as a substitute for the disabled steamer during the time of her detention should not militate against the right to compensation, nor afford just cause for awarding less than would be allowed if the owner, from lack of enterprise or inability, failed to have an available substitute for use in such an emergency."

In New Haven Steam-Boat Co. v. The Mayor (D. C.) 36 F. 716, at pages 717, 718, the court said: "The Continental being disabled by collision from continuing her trips, the Elm City, belonging to the same company, was substituted in her place. The latter was a 'sister-boat' to the Continental, of the same size, but much older, slower, and of less value. She was kept by the libelants as a spare boat, for the purpose, in part, as appears from the evidence, of continuing the trips of the line with regularity, in case of accident to one of the regular boats, or during their repair. She was also occasionally let out for excursions, and upon special charters. Demurrage at $250 per day is allowed by the commissioner for 15 days, while the Continental was undergoing repairs. The respondent contends that this claim should have been wholly disallowed, on the ground that the running of the Elm City in the place of the Continental in reality cost the owners nothing, and that they consequently sustained no actual damage in this respect. * * * The owners were entitled to procure another boat to take the place of the Continental, while she was disabled through the collision. It is immaterial to the respondents whether the substitute was hired from other persons at market rates, or supplied by the libelants themselves. * * * They are entitled, therefore, to charge for the use of their own boat at the market value of its use, for the time being, precisely as if they had hired her from other owners."

The case at bar is much stronger in favor of the owner of the Celtic, for the reason that the Baltic was not a substitute, but sailed on a regularly scheduled voyage, separate from and unconnected with the sailing of or loss to the Celtic, and it is immaterial to the issue herein that both voyages were sponsored by libelant.

The libelant is entitled to damages for detention without any deduction of passenger fares earned by the Baltic, by carrying passengers booked on the Celtic, for the voyage she lost by reason of the collision.

A decree for half damages in accordance with the stipulation filed, with interest in each instance at the rate of 4 per cent. per annum from the stipulated dates, with one-half costs, may be entered.

Submit findings of fact and conclusions of law.

Settle decree on notice.