## NAVIGAZIONE LIBERA TRIESTINA SOCIETA ANONIMA v. NEWTOWN CREEK TOWING CO. *

No. 218.

Circuit Court of Appeals, Second Circuit.

July 18, 1938.

*Rehearing denied, The Russell No. 3, — F.2d —.

See also, 82 F.2d 260.

Alexander, Ash & Jones and Bigham, Englar, Jones & Houston, all of New York City (Edward Ash and Andrew J. McElhinney, both of New York City, of counsel), for appellant.

Loomis, Williams & Donohue, of New York City (Homer L. Loomis, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Since we reversed the earlier decree in this case in 1936 which in effect awarded only nominal damages, there has been a second hotly contested reference before a new commissioner, resulting once more in a small award. The judge increased this very considerably and the claimant appealed: the libellant then filed assignments of its own. We shall not state again the main facts; they may be found in our former decision in The Tug Russell No. 3, 2 Cir., 82 F.2d 260. We take up the contested items of the award seriatim.

### (1) The Expense of Installing the Bronze Propeller.

The first dispute is as to how much of the fluke on the iron propeller was broken. On this the witnesses differed. Martin was the surveyor for the elevator Oswego, which was not charged with any fault, and he must have been neutral: he saw the propeller and estimated that the fluke had lost twenty inches. Richardson was Lloyd's classification surveyor, also a neutral: he had seen the propeller and had noted a break of twenty-four inches, but could not remember whether that was the width or the length of the broken tip. The choice is between a broken tip eight, or twenty, inches long; and if it was eight inches long and twenty inches wide—to say nothing of twenty-four—the fluke itself had a curious shape, its whole length being seven or eight feet. Gebauhr, the witness on whom the claimant in particular relied, himself put the width at only twelve inches, and Richardson's note must have referred to the length. Two officers of the ship said that twenty inches had been broken off, and on the first reference the claimant's witness, Habig, swore that twenty inches had been broken off one fluke. Against all these were Gebauhr and Loeser, for Bagger did not see the propeller. To-

gether they measured the width of the end and estimated the length of the lost tip. Their conclusion depended therefore upon the flare of the fluke; and we should suppose that one with a curve of long radius might well have a width of about twelve inches for a length of a foot. None of the witnesses went about the measurement in the simplest way: to measure a whole fluke and then the broken one. Possibly Martin and Richardson did, but they did not say so. Faced with this contradiction the commissioner chose Gebauhr and Loeser, of whom he had seen only Gebauhr. The claimant strongly presses upon us that we should treat his finding as ".presumptively correct" (Admiralty Rule 43½, 28 U.S.C.A. following section 723) and so we must; but it is "subject to review", and we "reject" it because, like the district judge, we are "fully satisfied that error has been committed". However well Gebauhr may have appeared, he was willing to say that the loss of a tip of twenty inches from one of the flukes did not make the ship unseaworthy: all the other witnesses disagreed with that, including Bagger, the claimant's other expert. It is true that we should not disturb a verdict supported by his testimony, little as we might agree with it; but the finding of a commissioner has no such immunity; in the end we are responsible as well for the facts as for the law, and upon an issue where the testimony was so unevenly weighted we cannot accept a finding based upon the impression made by one witness even though the commissioner—mistakenly supposing that this added force to his finding—assured us how persuasive he found him. We think that the judge was therefore right in holding that twenty inches had been broken off, and that this made the ship unseaworthy.

To repair the damage done by the collision it was necessary to dock the ship, unship the old propeller, draw the tail shaft, stow the propeller, and in its place reship a bronze propeller which the ship carried as a spare. Richardson had discovered cracks in the stern tube nut and bushing at the survey, and to repair these it was also necessary to dock the ship, draw the tail shaft and do more of the same work necessary to replace the propeller. Thus there were a number of items of expense common to both repairs; and the question arises whether the claimant should pay these, or only so much as was added by unshipping and stowing the old propeller and shipping the new one in its place. The situation is not like

that in Clyde S. S. Co. v. New York, 2 Cir., 20 F.2d 381, where the owner merely took the opportunity to make repairs which might have been delayed as they were not necessary to make the ship seaworthy. Nobody doubts that if two tortfeasors contribute to a single loss, each is liable in solido. Miller v. Union Pacific R. Co., 290 U.S. 227, 236, 54 S.Ct. 172, 174, 78 L.Ed. 285. This result is however scarcely logical so long as the injured person has the burden of showing that the tortfeasor whom he pursues caused the damage and how much he caused. On the other hand, since it is impossible to prove what share the act of either of the tortfeasors contributed, or whether it contributed any at all, if this prevailed, each would escape—an absurd result. To overcome this difficulty, the law imposes upon each tortfeasor the impossible burden of proof, contenting itself with limiting the injured person's total recovery to one indemnity. The situation is the same when one of the two contributing factors is not the result of an actionable fault: again, the single tortfeasor cannot be allowed to escape through the meshes of a logical net. He is a wrongdoer; let him unravel the casuistries resulting from his wrong. Cook v. Minneapolis, etc., R. Co., 98 Wis. 624, 74 N. W. 561, 40 L.R.A. 457, 67 Am.St.Rep. 830, is to the contrary, but very little of it remains after Kingston v. Chicago & N. W. R. Co., 191 Wis. 610, 211 N.W. 913, and we cannot agree with what does. Anderson v. Minneapolis, etc., R. Co., 146 Minn. 430, 440, 179 N.W. 45, is contra, and so is the Restatement of Torts § 432. The case at bar falls within this doctrine, for it was impossible to say that the nut and bushing contributed more to the common expenses than the propeller. The burden shifted to the claimant, as tortfeasor, and in such cases whoever has the burden, loses. We need not pass upon the supposititious case urged upon us of a ship in collision while already on her way to drydock, for here the ship would have sailed for Trieste as she rode. We do not therefore hold that a tortfeasor can never prove that such common expenses were not due to his fault; but we do hold with the judge that here they were on the claimant's account. Nor will we disturb the award made. The libellant paid the bill which a reputable shipyard charged it at a time when it must have known that recoupment was uncertain. That bill corresponded within reasonable limits with the yard's offer made in advance of the repairs, which the surveyors approved. In such circumstances expert testimony as to what should have been the charge is not of very great weight, certainly not, when as here it was disputed. The commissioner should have accepted the payments: we award $2,724.33.

## (2) Cost of a New Bronze Propeller, or of an Iron Propeller in New York.

The libellant first claims the value of the bronze propeller. This amazing claim apparently rests upon the theory that since, if she had not had a spare propeller on board, her detention damages, while a new propeller was being procured, would have been more than the value of her bronze propeller, that value is a benefit for which the claimant should pay. By this ingenuous reasoning the ship would have had her old bronze propeller at Trieste, and the price of a bronze one to boot in the place of the old iron one. This claim deserves neither comment nor answer. Next it claims in the alternative the cost of an iron propeller in New York, on the theory that that alone would restore the ship to the condition in which she was at the collision. More is to be said for this, but not enough. Every person injured by a wrong is no doubt entitled to be put back in his former position, but that position is to be judged by his practical needs. When the bronze propeller had been put in place, the ship did not need a new iron propeller: the old one was a good enough spare. Though in time she would need a new one, she was bound to buy where the market was lowest: that was at Trieste. Thus the libellant's claim was bad in both aspects, and in addition we can see no reason why the district judge should not have allowed to the claimant the junk value of the broken propeller. We award $1,321.17 for this item.

## (3) Renewing Zinc Plates.

Both sides agree that some zinc plates were necessary after the bronze propeller was installed; the only difference is how far forward they should have run. Again, we see no reason to cut the bill charged by the shipyard and paid by the libellant. We do not indeed mean that as to any of these items the claimant had to accept whatever the libellant chose to pay, and we recognize that in the nature of things it cannot challenge the figures except through the mouths of expert witnesses. But when the work is done in due course by a shipyard of standing, without suspicion that it and the

libellant are seeking to swell the claim, the contrary testimony should be convincing. Here the experts were divided and there was no clear preponderance, except again for the commissioner's preference for Gebauhr and Bagger. That will not serve to discredit charges made and paid in due course. We award $465.13.

### (4) Wharfage Charge against the Cargo during Repairs.

This item follows our disposition of the charges for docking the ship, drawing the tail shaft and the like. We award $360.-50.

### (5) Demurrage on Grain Barges.

This follows the previous item and for the same reason. We award $66.39.

### (6) Services of Men to Watch the Cargo Receiving Clerk. and Handling Him.

This also follows the two previous items. We award $138.26.

### (7) Survey Fee of Ross.

Ross was employed as a surveyor by the libellant and spent his time first in examining the ship to find what damage had been done, and later to supervise the repairs. Some of his services were on the libellant's account, some on the claimant's. The burden of allocation was on the libellant, which did not discharge it. We award $25, the amount admitted by the claimant.

### (8) Disbursing Fees of Ship's Agent.

Part of this item is 2½% upon the added expenses for which the agent disbursed the ship. It should be calculated upon the sums awarded, omitting the cost of a new iron propeller. The other part, $75, was the result of cutting in half a bill of the ship's agent for services "arranging for repairs, consultation with captain, underwriters, agents, surveyors and attorneys, etc." The apportionment is merely a guess and cannot be allowed. We tentatively figure the award at $118.47 (2½% on $4742.61), but the parties must settle the exact amount.

### (9) Painting the Ship's Bottom.

Ships are painted with a substance which prevents fouling unless it is exposed to the air; an exposure of 24 hours will destroy its virtue. Hence it is the custom of shipyards to paint the bottom whenever a ship is drydocked. Bagger and Gebauhr thought that the whole work of replacing the propeller could have been done within 24 hours, though in fact it took over two days, one of which was Sunday. The ship had been painted eight months before and was due for another painting in one month or at most in four. Nevertheless, following our decision relating to expenses common to both repairs, it seems to us that the item is on the claimant's account. The case is not as though the repainting had been necessary in any event; the ship would have gone to Trieste without it, the nut and bushing damage being unknown. Nor are we disposed to hold that the propeller repairs could have been completed within 24 hours, although the libellant did not call a witness to answer that part of the testimony of Bagger and Gebauhr. Quite aside from the conclusiveness of their estimate, there is no evidence that the overtime necessary to complete the job in 24 hours would not have cost more than the painting. No doubt the result was that the ship got a coat of paint good for nine months or a year in place of one good for only one or four months, but if the collision made painting necessary in any event, that was the libellant's good fortune. We award $740.

### (10) Bill for Lloyd's Fee.

The record as to this is in such confused condition that nothing can be awarded.

### (11) Stowing the Old Propeller.

When the old propeller was unshipped it was stowed in a hold where it could come into contact with the grain that the ship was to carry. It cost $100 to put it on board, concededly an allowable item, and $133 more to stow it, which the claimant disputed and the commissioner disallowed. It does not appear just how this money was spent, but it does appear that the propeller was housed with wood to keep away the grain, and against that the claimant protests. Gebauhr said that housing was unnecessary, but it did not appear that he knew that the grain might reach it. The libellant presumably was not wasting its money, and Stanley swore that the propeller should have been housed. The claimant answers that it is responsible only for putting the ship in the same condition that she had been in and that it did not appear that the bronze propeller had been housed, but Ross's report leaves no doubt that this had been done. We award $233.

### (12) Detention Damages.

The ship of course lost her time while unshipping the old propeller and ship-

ping the new. Because of this the libellant claims damages for three and a half days, based upon the average of her earnings for three and a half years before. Its position is that she is entitled to this, regardless of whether she would have been employed during the first three and a half days after she reached Trieste, or during any three and a half days thereafter. She reached Trieste after touching at several ports of call on January 27, 1926 and did not leave until March 10th on a fixture to Bombay. Meanwhile she had been repaired at Trieste and it is of course possible that the repairs continued until March 10th, so that she might have gone on hire on the 6th, had she not been delayed in New York. But there is no such evidence, and it is extremely unlikely that her repairs should have taken five weeks, or that the voyage to Bombay was open to her before March 10th. On this record she was idle more days than those which she had lost; prima facie she suffered no loss and she ought to recover no damages. The libellant appears to suppose that there are absolute rules applicable to detention which take it out of the usual principle that damages are only for indemnity. It is at times hard to say how much an owner has lost, but no case holds, when it affirmatively appears that he has lost nothing, that he can recover. The Conqueror, 166 U.S. 110, 125, 133, 17 S.Ct. 510, 41 L.Ed. 937, very clearly lays it down that the only basis for damages is proven loss of profits, and while Brooklyn Eastern District Terminal v. United States, 287 U.S. 170, 175, 53 S.Ct. 103, 104, 77 L. Ed. 240, questioned this in the case of yachts, it has never been doubted as to commercial vessels. We have repeatedly so held. The North Star, 2 Cir., 151 F. 168; The Winfield S. Cahill, 2 Cir., 258 F. 318; Newtown Creek Towing Co. v. New York, 2 Cir., 23 F.2d 486; The James McWilliams, 2 Cir., 42 F.2d 130; The Glendola, 2 Cir., 47 F.2d 206. We affirm the denial of any detention award.

The decree is modified (1) by crediting to the claimant $75 upon the old propeller; (2) by cutting the award for Ross's fee to $25, and the fee for agent's services to $118.47 (subject to recomputation); (3) by disallowing the award of $35 for the fee of Lloyd's. Otherwise the decree is affirmed. The libellant will recover its costs and disbursements in this court.

Decree modified as above stated.