## THE NICOLAOU MARIA.

## THE NIDARHOLM.

**GEORGE NICOLAOU, Limited, et al. v. A/B HELSINGFORS S. S. CO., Limited, et al.**

No. 10854.

Circuit Court of Appeals, Fifth Circuit.

June 19, 1944.

Rehearing Denied July 24, 1944.

WALLER, Circuit Judge, dissenting in part.

H. C. Hughes, of Galveston, Tex., for appellants.

M. L. Cook, of Houston, Tex., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

On February 5, 1940, when the Finnish S. S. Nidarholm was moored to the dock in the Houston ship channel, engaged in loading cargo for a voyage under a charter party to Liverpool, she was struck and damaged by the S. S. Nicolaou Maria. Seven days were required to repair the damage, after which the loading and performance of the charter party were resumed. Other litigation has settled the question of liability, and it is agreed that appellees were entitled to damages in the sum of $15,459.86. The only issue below was whether they also were entitled to demurrage for the seven days during which the vessel was detained, and unable to engage in profitable operation. The court below found for libelant, and appellant has appealed.

The Nidarholm finished loading on February 14, 1940, and proceeded to Halifax where she joined a convoy for the voyage across the Atlantic. She reached Liverpool on March 20, 1940, and completed the discharge of cargo in nine days. When in Liverpool, she had another charter party for a voyage to Denmark, but that was frustrated by the German invasion of Denmark on April 9, 1940. She remained in Liverpool awaiting orders and a convoy until April 18, 1940, when she made her return voyage without cargo.

The charter to Liverpool was executed without diminution of the consideration paid. It is not affirmatively shown that the charter party to Denmark might have been performed but for the delay; nor does the record show how much time would have been required to fulfill that charter, when loading was to begin thereunder, or any other material facts. The record shows that no effort was made to begin performance of the charter prior to its frustration; and it appears that the master of the Nidarholm did not learn of the existence of the charter party until he.

reached New York on the return trip. There are no facts to indicate that other employment would have been available if the vessel had discharged her cargo in Liverpool seven days earlier.

The allowance of demurrage for loss of the use of a commercial vessel pending repairs arising from a collision depends upon whether profits actually have been, or reasonably may be supposed to have been, lost.[1] Detention alone does not entitle an owner to demurrage; it must be shown with reasonable certainty that the vessel would have been employed if she had been in good repair.[2] The burden of establishing that profits were lost was upon the owners of the Nidarholm.[3] We find no such proof in the record.

The delay in completing performance of the charter party to Liverpool was not financially prejudicial to appellees, for the full contract price of the charter party was paid plus all out-of-pocket expenses incurred during the seven-day delay. The evidence also fails to show that profits actually were lost because the delay postponed the availability of the vessel for other employment. It is not probable that the charter to Denmark was remotely affected by the delay, since no effort was made to execute that contract at any time prior to its frustration. No showing is made as to the demand for such vessels in or near Liverpool from March 22 to March 29, 1940, but prevailing conditions may be indicated by the fact that in the succeeding three weeks the ship found no employment and returned to the United States without cargo.

Under these circumstances, any award of demurrage would rest upon surmise and speculation, not upon the basis of proof in the degree of certainty required by law. The judgment is reversed, and the cause remanded to the district court with instructions to disallow the demurrage and recompute the damages and interest accordingly.

WALLER, Circuit Judge (dissenting).

A tort feasor, who injures and delays a profit-making vessel, should not be allowed to defend on the ground that at some time between the injury and judgment the injured vessel was laid up for another period equivalent to, or in excess of, the period of delay caused by his wrongful injury. While there are decisions that allow a tort feasor to escape liability for his wrongful delay of a vessel on the excuse that the vessel was not profitably engaged during the period of the wrongful delay, I am aware of no case where the wrongdoer has been permitted to escape liability by waiting, perchance, to see if the injured vessel might not have an idle period at some time in the future, or during a later voyage, and thus be allowed to urge that since the vessel had a delay many weeks later the delay which he caused was harmless. If the wrongdoer is permitted to show that during *some* period between the wrong and the remedy the vessel which he had hurt was not continuously plying the sea at a profit, an injured vessel could never recover for wrongful delays unless it sued and recovered before it had an idle period for any cause whatsoever. It seems both illogical and unjust to allow a tort feasor to escape responsibility for delaying a vessel, which *at the time of the injury* was gainfully employed, merely because the wrongdoer was able to show that at some time after the present voyage the vessel was tied up at a dock for an equivalent or longer period.

Nor do I believe that the fact that the vessel returned empty to the United States for another cargo is proof that the vessel so returning was not profitably engaged. Doubtless, it would have made more profit if it had had a cargo both ways, but the fact that it did not merely means a reduction, and not an absence, of profit. A railroad would not be adjudged to be operating without profit merely because it returns empty oil tanks to the refinery for refilling, or empty box cars for reloading. It is

---

[1] The Conqueror, 166 U.S. 110, 17 S. Ct. 510, 41 L.Ed. 937; The Wolsum, 5 Cir., 14 F.2d 371; Cuyamel Fruit Co. v. Nedland, 5 Cir., 19 F.2d 489.

[2] The Conqueror, supra; Brooklyn Eastern District Terminal v. United States. 287 U.S. 170, 53 S.Ct. 103, 77 L. Ed. 240; The North Star, 2 Cir., 151 F. 168; Navigazione Libera T. S. A. v. Newtown Creek T. Co., 2 Cir., 98 F.2d 694.

[3] The Winfield S. Cahill, 2 Cir., 258 F. 318; Newtown Creek Towing Co. v. City of New York, 2 Cir., 23 F.2d 486; The Priscilla, D.C., 27 F.2d 921; Roscoe, Measure of Damages in Maritime Collisions, 2d Ed., page 5.

stipulated in the record that if there is liability the average earnings were some $565.16 per day. This stipulation carried the burden of showing a profit and entitled the injured vessel to recover this amount per day unless the wrongdoer can defend because of a delay occurring weeks later and after the expiration of the pending voyage.

The decree of the lower court was correct and should have been affirmed.

### On Petition for Rehearing.

PER CURIAM.

The petition for rehearing is denied except in so far as it prays that judgment be entered in this court in accordance with the opinion heretofore filed. In that respect, the petition is sustained and the clerk is ordered to amend the judgment accordingly.

WALLER, Circuit Judge (specially concurring).

I concur in the order on petition for rehearing but think that rehearing should be allowed on the merits on the whole case for the reasons stated in my dissenting opinion.