**MORAN TOWING CORPORATION,**
Appellant,

v.

**M. A. GAMMINO CONSTRUCTION COMPANY, Appellee.**

**UNITED STATES of America, f/u/b/o Moran Towing Corporation,**
Appellant,

v.

**HARTFORD ACCIDENT AND IN-DEMNITY COMPANY, Appellee.**

Nos. 7239, 7240.

United States Court of Appeals
First Circuit.

April 9, 1969.

Eugene Underwood, New York City, with whom Robert B. Pohl and Frank L. Wiswall, Jr., New York City, Tillinghast, Collins & Tanner, Providence, R. I., and Burlingham, Underwood, Wright, White & Lord, New York City, were on brief for appellants in Nos. 7239 and 7240.

Donald M. Waesche, Jr., New York City, with whom Claude R. Branch, Providence, R. I., Louis P. Sheinbaum and Bigham, Englar, Jones & Houston, New York City, were on brief for appellee in No. 7239.

Edward F. Hindle, Richard M. Borod and Edwards & Angell, Providence, R. I., on brief for appellee in No. 7240.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is the second appeal to this court from the district court's determination in an action for damages to scows owned by appellant Moran Towing Corporation. The damage occurred while the scows were carrying breakwater stone under a contract with appellee Gammino Construction Company. The facts of this case are set forth in detail in the first district court opinion and in our earlier decision. Moran Towing Corp. v. Gammino Construction Co., 244 F.Supp. 729 (D.R.I.1965), rev'd and remanded, 363 F.2d 108 (1st Cir. 1966). The facts are discussed here only insofar as it is necessary to the resolution of this appeal.

The contract under which the scows were chartered to appellee provided that appellant would be responsible for ordinary wear and tear to the vessels due

to the nature of the cargo but that appellee would be responsible for all damage due to its own negligence, and for all damage, irrespective of appellee's negligence, caused by the loading of pieces of stone weighing in excess of 1000 pounds.

In the initial proceedings in this case the district court found that although it appeared that Gammino frequently loaded stones in excess of 1000 pounds, Moran had not established what portion, if any, of the damage to the scows resulted from such loading. In addition, the district court found that Moran had failed to show what part of the damage was attributable to the operation of the skip box (a three ton truck body used to preload each hopper of the scows) and groundings of the scows. The court then held that there could be no recovery since Moran had not met its burden of showing damages from a cause for which Gammino was liable. Moran Towing Corp. v. Gammino Construction Co., 244 F.Supp. 729, 735 (D.R.I.1965).

On appeal we upheld the district court's finding with respect to damage from the loading of oversize stone. 363 F.2d at 111. However, we concluded that the district court had misconceived the meaning of "wear and tear" and that it therefore erroneously ruled that Moran had failed to demonstrate damage of some consequence attributable to negligent operation of the skip box. We also concluded that, since the predominant number of groundings were attributable to Gammino, it was responsible to some extent for this element of damage. Accordingly, we reversed and remanded the case for a determination of Gammino's liability.

On remand the district court found that substantial damage occasioned by the negligent operation of the skip box was done to certain structures affixed to the surfaces of or bordering the hoppers —the coaming, the pipeguards and cable guards, and the hydraulic piping. However, with respect to each item the district court concluded that Gammino should be liable for only fifty per cent of the repair costs. The court also found that Gammino was liable for fifty per cent of the damage to the shell plating and frames (i. e., part of the exterior hull) because of its failure to provide a sufficient depth of water for the scows. In addition the court held Gammino liable for fifty per cent of the cost of repairs to the well plates in the bottom of each hopper because the court found the damage to have been caused by inadequate preloading of the scows which was clearly Gammino's responsibility. The court found no liability on Gammino's part for damage to the well brackets, slope plates and slope angles, bulkhead plating and bulkhead stiffener, and hopper doors.[1] Finally, the court denied recovery for drydock and related expenses and for the loss of use of the scows.

Appellant's first contention in this appeal is that the district court applied the wrong measure of recovery in that it held Gammino liable for only fifty per cent of the cost of repairs due to skip box damage and inadequate preloading. According to appellant, once it is shown that damage of some consequence was caused by Gammino's negligence, Gammino must segregate the damages and failing to do so it must bear the entire cost of repairs. *See e. g.,* Navigazione Libera T.S.A. v. Newton Creek Towing Co., 98 F.2d 694 (2d Cir. 1938); Nassau Sand & Gravel Co. v. Red Star Towing & Transportation Co., 62 F.2d 356 (2d Cir. 1932).

Needless to say, appellee disagrees with Moran's argument. Appellee contends that since the district court found that part of the damage was attributable to ordinary wear and tear in the loading of stones under 1000 pounds in weight,

---

1. Each hopper was bounded fore and aft by bulkheads (the surface of which was steel plating). The sloping sides of each hopper (constructed of slope plates resting on interior slope angles) led to a well at the bottom (enclosed by well plates supported by interior well brackets), surrounding the hopper doors through which the scow dumped its cargo.

the admiralty rule of divided damages was properly applied. *See, e. g.*, Southport Transit Co. v. Avondale Marine Ways, 234 F.2d 947 (5th Cir. 1956); Atlantic Pipeline Co. v. Dredge Philadelphia, 247 F.Supp. 857 (E.D.Pa.1965), aff'd, 366 F.2d 780 (3rd Cir. 1966).

We indicated in our earlier opinion that the burden of segregating damages should be on the negligent party once illicit damage of consequence is established. 363 F.2d at 113. This was and is conventional wisdom. But having been twice exposed to the problems in this case of proof and of decision and to subsequent helpful oral argument, we see no sensible alternative to applying the divided damages rule on items where the proof establishes shared responsibility, but fails to segregate. We recognize that the divided damages rule has traditionally been applied to cases involving either contributory negligence or the doctrine of avoidable consequences. In such cases the element of fault is present as, for example, when two vessels collide, each being negligent. This may have tended to obscure the basic analysis that damages are divided between those responsible for two producing causes. While such causes of damage are usually linked with "fault" or negligence, there is no reason why such a linkage is indispensable. In the case at bar there were two producing causes of damage. One—reasonable wear and tear—was not a fault, but was nevertheless attributable by contract to Moran. The other—negligently caused damage in loading—was a fault and attributable to Gammino. The fact that the former arose out of contract rather than tort does not change the fact that damage has resulted from two causes under circumstances where precise apportionment is impossible.

Since we uphold the application of divided damages to the items where the court found significant skip box damage, *a fortiori,* and on traditional theory, the court was correct in dividing the damage to shell plating and frames caused by the grounding of the scows when no particularization was made in the testimony. While Gammino was responsible for providing a sufficient depth of water, at least one of the groundings was the fault of Moran.

Appellant also contends that the district court erred in not finding Gammino liable for damage to slope plates and angles, bulkhead plating and stiffeners, and hopper doors. We shall consider each item separately. We are well aware that the findings of the district court are not to be lightly disturbed. Rule 52(a), Fed.R.Civ.P. Recognizing the weight to which the court's findings are entitled, we base our review on objective indicia of causes of damage, as we did before, rather than on the evaluation of conflicting testimony.

We consider first the question of damage to the fore and aft bulkheads. Both the loading of stones of 1000 pounds or less in weight and the skip box were a competent cause of the damage. However, the objectively established and non-disputed pattern of damage clearly demonstrates that Gammino must bear part of the responsibility. Specifically, the top of the fore and aft bulkheads were damaged only on the port side. It is inconceivable that all of the stones being dropped into the hoppers (in the course of several hundred loadings over a five month period) should collide only with the port side. This observation is reinforced by the absence of damage to the intermediate bulkheads. This is readily explainable by the presence of iron guards which prevented the skip box (but not stones, had they been a sufficient cause) from striking the intermediate bulkheads. In short, Moran has shown sufficient illicit damage to the bulkheads, and Gammino must bear fifty per cent of the cost of repairs.

In the case of damage to the slope plates and slope angles the court was again confronted with a situation where both stones and the skip box were competent causes of the damage. Gammino's expert, Mr. Simpson, testified

that the loading of stones less than 1000 pounds in weight falling five feet from the conveyor belt would cause indentation in the slope plates, and that the cumulative effect of such loading would be substantial. The district court was clearly entitled to believe Simpson's testimony. However, Moran argues that Simpson's conclusions were erroneous because of the damage to the slope angles. According to Moran, since more force would be required to damage the slope angles than the slope plates, and since the angles could be damaged only after the plates were damaged, the loading of stones could not have been the cause of the damage. Assuming the premises to be true, the conclusion does not follow. Moran's position rests on what is essentially a misinterpretation of Simpson's testimony. Simpson did admit that greater force was required to damage the angles but he did not rule out the presence of such force in the loading of stone. In response to a question as to how far a 1000 pound stone would have to fall in order to damage the angles, Simpson replied that he did not know and had made no calculations for heights above five feet. Counsel for Moran did not see fit to request or submit any such calculations. The district court might well have believed that stones falling ten to twenty feet could damage the angles.[2] In light of our determination that Gammino is not liable for slope plate damage, Moran's claim for damage to the deck brackets is also foreclosed.[3]

■ Moran also contends that the replacement of the doors and door fittings was necessitated by skip box damage. It is clear that the doors sustained substantial wear and tear during the period of the contract. This, of course, would be Moran's responsibility. On the other hand it is also clear that the skip box struck the doors on occasion, and perhaps most importantly, the district court found that improper preloading was a substantial cause of damage to the well plates which were adjacent to the doors. If improper preloading damaged what were in effect the sides of a box, we cannot escape the conclusion that it damaged the bottom of the box. The situation hypothesized by Gammino of a stone resting on the doors and protruding above the preloading being struck by another stone falling from the conveyor might explain some of the broken timbers, but it would require imagination which we do not possess to ascribe all the broken timbers to such occurrences. In short, Gammino must be responsible for fifty per cent of the damage to the doors.

■ Finally, Moran argues that Gammino is liable for drydock and related expenses, and for damages due to the loss of the use of the scows. Both parties agree that Gammino would be liable only if the damages caused by Gammino extended the lay-up period. See, e. g., The Pocahontas, 109 F.2d 929 (2d Cir. 1940); Clyde S.S. Co. v. City of New York, 20 F.2d 381 (2d Cir. 1927). The district court found that the damage attributable to Gammino did not extend the lay-up period. Nothing in this opinion alters that result. While the erection of staging might have been necessary for work on the bulkheads, it was clearly required for work on the slope plates which has been held to be the responsibility of Moran. With re-

2. Simpson testified that 1000 pound stones falling five feet involved potential energy of 60,000 inch. pounds. The conveyor belt was approximately 25 feet above the waterline and stones could have fallen at least 10–15 feet into the hoppers. In such a case the potential energy would be at least twice the magnitude of Simpson's example.

3. The deck brackets are a continuation of the slope angles. They are internal parts and could not be struck directly by either stones or the skip box. Moran argues that the deck brackets were damaged by the same instrumentality which damaged the slope plates and angles. The district court made no findings as to the deck brackets but in light of its finding on the slope plates and angles, none are now necessary.

spect to other activities such as testing and cleaning, there is no evidence that damages for which Gammino is liable extended the time in drydock beyond that which was required by repairs on Moran's account.

The judgments of the district court are affirmed, except as to those additional matters for which we have held that Moran is entitled to receive one half of its damages. The cause is remanded for such recalculation on the present record and entry of new judgments.